The STATE of Ohio, Appellee,

v.

THOMPSON, Appellant.

[Cite as *State v. Thompson* (1999), 140 Ohio App.3d 638.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 73492.

Decided April 1, 1999.

*William D. Mason,* Cuyahoga County Prosecuting Attorney, and *William B. Vodrey,* Assistant Prosecuting Attorney, for appellee.

*James A. Draper,* Cuyahoga County Public Defender, and *Scott Roger Hurley,* Assistant Public Defender; and *Lawrence Thompson, pro se,* for appellant.

Rocco, Judge.

Defendant-appellant Lawrence Thompson appeals from the trial court order that found him to be a sexual predator pursuant to R.C. 2950.09(C). Appellant challenges the order on constitutional grounds and also on procedural grounds. Although this court rejects appellant's constitutional arguments, his argument that the trial court's order is inadequately supported by evidence in the record has merit. Therefore, the judgment of the trial court is affirmed in part and reversed in part.

Appellant originally was indicted on eight counts as follows: two counts of rape, R.C. 2907.02; two counts of kidnapping, R.C. 2905.01; two counts of disseminating matter harmful to juveniles, R.C. 2907.31; and two counts of gross sexual imposition, R.C. 2907.05. All of these offenses were alleged to have occurred on July 16, 1993; they related to two victims, *viz.,* David Dishon, "DOB 10/25/89," and Thomas Dishon, "DOB 8/1/87."

According to this court's opinion in *State v. Thompson* (June 1, 1995), Cuyahoga App. No. 67846, unreported, 1995 WL 328480, the following incident led to appellant's indictment on the foregoing charges:

The record reveals that on the evening of July 16, 1993, State of Ohio Park Ranger Kevin Erskine was on routine patrol in a marked car at Edgewater State Park in the city of Cleveland, Ohio.

At approximately 8:45 p.m., Erskine was westbound on the park roadway when a van pulled out from a parking area in front of him. The van weaved as it proceeded westbound about a car length in front of Erskine's car. Erskine could see through the rear window of the van as it traveled; he noticed the driver, later identified as appellant, seemed preoccupied with attempting to place something beneath his seat. Thus, the van traveled less than a hundred feet before Erskine saw it go left of center twice and swerve once to the right onto the grass of the berm. Erskine therefore decided to stop the van for the traffic violations he had observed.

When Erskine activated the lights of his car, appellant pulled over onto the berm. Erskine approached the driver's side and requested to see appellant's driver's license. Appellant reluctantly produced it and handed it to Erskine, asking why he had been stopped. Erskine at this time was looking into the van. He saw two male children, aged less than ten years, seated on the floor in the front passenger area. They were clad only in swim trunks or shorts and had traces of food on their faces. They were sitting "Indian-style" with their backs against boxes. Erskine could see that the boxes contained pornographic materials. Moreover, as he looked in, Erskine estimated that he saw several hundred pornographic magazines in boxes in appellant's van.

The license appellant produced was from Georgia. After Erskine told appellant he had been stopped for a traffic violation, appellant repeatedly asked for a citation so he could be on his way. Erskine asked appellant if the children were his; appellant replied they were a neighbor's. However, appellant did not respond when Erskine asked for the children's names.

Erskine then asked the children to tell him their names. They did not respond. Erskine thought they looked "extremely fearful." He then returned to his car to check appellant's license.

By this time, another park officer had arrived in his car to provide assistance. With this, Erskine went to the passenger side of the van and requested the children to exit. He placed them in his colleague's car and then returned to appellant's van. He then arrested appellant.

Prior to appellant's trial, the trial court ordered appellant referred to the psychiatric clinic to determine both his competency to stand trial and his sanity.

Appellant later filed a motion to suppress evidence; the trial court set all of these matters for hearing on June 27, 1994.

The record reflects the hearing proceeded as scheduled. In its journal entry concerning the hearing, the trial court noted that the psychiatric reports "have been stipulated to and accepted to [*sic*] by court." The journal entry further stated that appellant's motion to suppress evidence was overruled.

Appellant's case proceeded to a jury trial on August 3, 1994. On August 8, 1994, the jury found appellant guilty on all counts. The following day, the trial court sentenced appellant to consecutive terms of incarceration of life on counts one and two, eight to twenty-five years on counts three and four, and two years on each of the remaining counts.

Appellant filed an appeal of his convictions in this court, arguing only that the trial court erred in denying his motion to suppress evidence. This court reviewed the record, determined that the trial court acted appropriately in denying appellant's motion and, accordingly, affirmed appellant's convictions. *State v. Thompson, supra.*

On July 22, 1997, pursuant to R.C. 2950.09(C)(1), the trial court was notified by the Ohio Department of Rehabilitation and Correction that, after a screening procedure, appellant "may fit the criteria of a sexual predator." The "screening instrument" utilized by the department's representative was attached to the notice. On it, the representative noted next to the words "forms reviewed" only the designation "PSI." [1]

Of the ten categories listed on the screening instrument as relevant to the inquiry, which correspond generally to the factors listed in R.C. 2950.09(B)(2), only two were marked affirmatively, *viz.*, more than one victim was involved in the "sexually oriented offense," and the victims were under the age of thirteen years.[2] The instrument indicated that appellant was not "convicted 2 or more times in separate criminal actions of a sexually oriented offense," that appellant did not use "drugs or alcohol to impair the victim[s] * * *," that appellant did not commit "1 or more sex offenses in which [he] had displayed cruelty," that appellant was not "under community supervision or release at the time of the current conviction," and that appellant had not failed "to participate in or * * * to successfully complete sex offender programming." Appellant's prior convictions were stated to be convictions for "grant theft" and "forgery."

---

1. The words for which the abbreviation substitutes were not explained on the "screening instrument." Moreover, the record fails to reflect that the trial court ordered a "pre-sentence investigation" and report prior to sentencing appellant.

2. Appellant's date of birth was noted as "5–10–50."

Subsequent to receiving the notification, the trial court, on October 14, 1997, held a hearing to determine appellant's status pursuant to R.C. 2950.09(C). Appellant appeared at the hearing with appointed counsel. Counsel previously had filed a motion to dismiss the proceedings on constitutional grounds.

The prosecutor proceeded to recite a brief version of the facts adduced at appellant's trial. When the prosecutor finished his recitation, the trial judge volunteered that he would "never forget that trial. As long as [he lived] on this earth * * *." The prosecutor thereafter concluded his remarks by stating that appellant had been convicted of all of the offenses charged and sentenced and, further, that his convictions had been affirmed on appeal.

At that point, appellant's counsel proceeded to argue his motion to dismiss the proceeding, contending both that the statute was unconstitutional and that the state had "failed * * * to meet [its] burden" of producing evidence to support the conclusion that appellant was a "sexual predator." The trial court stated that it was "inclined to deny [appellant's] motion based upon the statements on the record by the prosecutor and [the] Court's own memory about the case."

The trial court then proceeded to address appellant personally. Following a discussion of some personal matters, during which appellant's counsel requested the trial court "to consider referring [appellant] to the psych [sic] clinic for an evaluation" based upon the mannerisms and confusion appellant displayed at the hearing, the trial court denied appellant's motion to dismiss and appellant's counsel's request for an evaluation. The trial court thereupon determined appellant to be a sexual predator.

■ Appellant now appeals from the trial court's order, presenting eleven assignments of error for this court's review. Appellant's constitutional challenges to the trial court's order follow:

"I. H.B. 180, as applied to appellant, violates Art. I, Sec. 10, of the United States Constitution as ex post facto legislation, and violates Article II, Section 28, of the Ohio Constitution as retroactive legislation.

"II. The sexual predator hearing in the case at bar violated appellant's due process rights, guaranteed by the United States and Ohio Constitution, When the hearing failed to comport with the mandates of H.B. 180 which include 'witnesses,' 'evidence,' and the 'right to cross–examine' the evidence against appellant.

"IV [sic]. Application of H.B. 180 in the case at bar violates the equal protection clause of the Fourteenth Amendment of the United States Constitution.

"V. Application of the 'clear and convincing evidence' standard in appellant's H.B. 180 hearing violates equal protection, guaranteed by the Fourteenth Amendment of the United States Constitution, and due process, guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

"VI. H.B. 180 is void for vagueness since it compels a court to make a preponderance determination based upon clear and convincing evidence.

"VII. H.B. 180 is an unconstitutional bill of attainder.

"VIII. H.B. 180, as applied to appellant, constitutes double jeopardy, in violation of the Fifth Amendment of the United States Constitution and Art. I, Sec. 10 of the Ohio Constitution.

"IX. The public notification provisions of H.B. 180, as applied to appellant, violate appellant's constitutional right to privacy.

"X. H.B. 180, With its legislated stigma of public notification, constitutes cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution and Art. I, Sec. 9 of the Ohio Constitution."

The above arguments have been addressed by the Ohio Supreme Court in *State v. Cook* (1998), 83 Ohio St.3d 404, 700 N.E.2d 570, and by this court in *State v. Ward* (1999), 130 Ohio App.3d 551, 720 N.E.2d 603. All were deemed meritless; hence, these assignments of error are overruled.[3]

Appellant's eleventh assignment of error states:

"The trial court erred in imposing registration requirements upon appellant, since appellant was sentenced prior to the effective date of R.C. 2950.04, which provides for the manner of offender registration."

Appellant argues that based upon this court's opinion in *State v. Hooks* (Dec. 18, 1997), Cuyahoga App. No. 72780, unreported, 1997 WL 781715, the trial court improperly applied R.C. 2950.04 because the statute "was not in effect at the time of his sentencing." Appellant's argument is unpersuasive.

A review of this court's decision in *Hooks* reveals that its analysis applies only to those cases in which the offense was committed prior to January 1, 1997, but the offender was sentenced between January 1, 1997 and July 1, 1997. Since appellant was sentenced on August 9, 1994, his reliance upon *Hooks* does not avail him. R.C. 2950.09(C)(1).

---

3. Moreover, a review of appellant's motion to dismiss and of the transcript of the hearing reveals that appellant presented no arguments with respect to Assignments of Error V, VI and VII; therefore, appellant waived them for purposes of appeal. *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277.

Accordingly, appellant's eleventh assignment of error lacks merit; therefore, it is overruled.

Appellant's third assignment of error states:

"The evidence is insufficient, as a matter of law, to prove 'by clear and convincing evidence' that appellant 'is likely to engage in the future in one or more sexually oriented offenses.' "

■ Appellant argues that the evidence presented by the prosecutor was inadequate to establish that he is a sexual predator.

In pertinent part, R.C. 2950.09(B)(1) states:

"At the hearing, *the offender* and the prosecutor *shall have an opportunity to testify, present evidence, call and examine witnesses and expert witnesses, and cross-examine witnesses and expert witnesses* regarding the determination as to whether the offender is a sexual predator. The offender shall have the right to be represented by counsel and, *if indigent, the right to have counsel appointed* to represent the offender." (Emphasis added.)

Furthermore, R.C. 2950.01(E) defines a "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage *in the future* in one or more sexually oriented offenses." (Emphasis added.) Appellant's convictions qualify as sexually oriented offenses pursuant to R.C. 2950.01(D); however, the second prong of the definition also must be satisfied by clear and convincing evidence. R.C. 2950.09(B)(3).

In making a determination as to whether an offender is a sexual predator, therefore, the trial judge must consider all relevant factors, including, but not limited to, the factors listed in R.C. 2950.09(B)(2):

"(a) The offender's age;

"(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;

"(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;

"(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;

"(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;

"(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented

offense, whether the offender participated in available programs for sexual offenders;

"(g) *Any mental illness or mental disability of the offender;*

"(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;

"(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;

"(j) Any additional behavioral characteristics that contribute to the offender's conduct." (Emphasis added.)

■ R.C. 2950.09(B)(2) does not require that each factor be met; however, it does require that the trial court consider those factors that are relevant. See, *e.g., State v. Tracy* (May 20, 1998), Summit App. No. 18623, unreported, 1998 WL 254948.

■■ The standard of "clear and convincing evidence" is the measure or degree of proof that is more than a mere "preponderance of the evidence" but not to the extent of such certainty as is required "beyond a reasonable doubt" in most criminal cases. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60. Clear and convincing evidence is the measure or degree of proof that produces in the mind of the trier of facts a firm belief or conviction as to the fact sought to be established. *Id.* In reviewing a trial court's decision based upon clear and convincing evidence, an appellate court must examine the record to determine whether sufficient evidence exists to satisfy the requisite degree of proof. *Id.*

In this case, although the trial court was presented with evidence to support the first prong of R.C. 2950.01(E)'s definition of sexual predator, it was provided with nothing beyond the facts of appellant's convictions to satisfy the second prong. Assuming that the "screening instrument" is a competent item of evidence, a review of it reveals that many of the factors set forth in R.C. 2950.09(B)(2) were not met.

Moreover, a review of the transcript of the hearing reveals that the trial court gave no consideration to this fact. The trial judge never mentioned either the factors or the relevant subsection of the statute; rather, the trial judge merely stated that he would "never forget" appellant's trial and that he would rely on his "own memory" to make its determination. These statements were adequate neither for purposes of the statutory scheme nor for appellate review of the trial court's decision. It was not enough simply to remember the facts of appellant's

case; the trial court was required to set forth its recollections for the record of the hearing, particularly those that both related to the R.C. 2950.09(B) factors and were probative of appellant's recidivism.

Furthermore, despite both a lack of evidence regarding either appellant's failure to "participate in available programs" or any expert testimony regarding appellant's current psychological condition, and, indeed, despite an obvious awareness of the unusual behavior appellant was displaying throughout the hearing, the trial court summarily refused to refer appellant for a court-ordered psychiatric evaluation. Arguably, appellant's behavior was evidence that a psychological expert was "reasonably necessary" for appellant to be properly represented at the hearing. See, e.g., State v. Esparza (1988), 39 Ohio St.3d 8, 529 N.E.2d 192.

Under these circumstances of this case, no clear and convincing evidence was presented to prove that appellant "is likely to engage in the future in one or more sexually oriented offenses," as required by R.C. 2950.01(E) and R.C. 2950.09(C). Appellant's third assignment of error, accordingly, is sustained.

In order to provide further guidance for the trial court in cases such as appellant's, this court notes the following admonition, set forth in *State v. Ward, supra,* authored by John T. Patton, the senior judge of the Eighth District Court of Appeals, 130 Ohio App.3d at 561, 720 N.E.2d at 610:

"We disagree with the state's argument that defendant stipulated to being a sexual predator. Defendant stipulated to the facts supporting his conviction on a sexually oriented offense, not that he was, in fact, a sexual predator. *This is an important distinction, for if we accept the state's argument it would mean that any conviction for a sexually oriented offense would be irrebuttable proof that an offender is a sexual predator.* This conclusion cannot hold, because the statute is not 'one strike and you're out.'

"* * *

"*[S]imply committing* a single *sexually oriented offense is not proof, without further evidence or other compelling facts,* that the offender is 'likely to engage in the future in one or more sexually oriented offenses.' Had the legislature intended the result argued by the state, it would have done away with the hearing and weighing of evidence and simply classified any person committing a sexually oriented offense as a sexual predator." (Emphasis added; citations omitted.)

■ The trial court does well, therefore, to consider as many factors as possible in a case such as appellant's in making its determination of the likelihood of the offender's recidivism. See, also, *State v. Cook, supra,* at 424–426, 700 N.E.2d at 586–588. Especially in view of both the law's stated "paramount" purpose, *viz.,* protecting children from those persons in our society who would prey upon them and the obviously limited availability of law enforcement re-

sources for notification and monitoring, the procedures of "Megan's law" provide the trial courts of Ohio with the opportunity to accurately identify those convicted pedophiles who pose the *greatest risk* to children. The statute is "narrowly tailored to comport with the respective danger and recidivism levels of the different classifications of sex offenders." *Id.* at 422, 700 N.E.2d at 584–585. Therefore, the trial court's determination similarly should be precise.

While in cases such as *Cook* there may be sufficient evidence in the trial transcripts, victim statements, and/or presentence reports that either relate to the factors listed in R.C. 2950.09(B)(2) or are probative of the second prong of the statutory definition, there will be other cases where the use of expert testimony, whether such testimony is psychiatric, psychologic, or criminologic, may be useful in supplementing the bare facts of a conviction. See, *e.g., State v. Ward, supra; State v. Patterson* (Feb. 11, 1999), Cuyahoga App. No. 72448, unreported, 1999 WL 84055.

In a model sexual predator determination hearing, the prosecutor and defense counsel would take care to identify on the record those portions of the trial transcript, victim impact statements, presentence report, and other pertinent aspects of the defendant's criminal and social history that both relate to the factors set forth in R.C. 2950.09(B)(2) and are probative of the second prong of R.C. 2950.01(E). Either side might present expert opinion by testimony or written report to assist the trial court in its determination when there is little information beyond the fact of the conviction itself. The trial court not only would then consider on the record the statutory factors themselves but, in addition, would discuss in some detail the particular evidence and factors upon which it relies in making its determination. Finally, it would include evidentiary materials in the record for purposes of any potential appeal.

In this case, especially due to the limited nature of appellant's original appeal, there is little pertinent information on the record beyond the fact of appellant's set of convictions based upon a single incident. It is likely, therefore, the use of expert testimony would have assisted the trial court in making a more accurate finding as to appellant's status.

Without such accuracy in the sexual predator determinations made by trial courts, society and its limited law enforcement resources risk being flooded with a number of persons who may or may not deserve to be classified as high-risk individuals, with the consequence of diluting both the purpose behind and the credibility of the law. This result could be tragic for many.

For these reasons, in this court's view the following language in *Ward* must be emphasized:

"It is important to keep in mind that R.C. 2950.09 does not place limits on the factors a court may consider, but simply directs the court to consider 'all relevant factors.' Relevant information can come from many sources. In *Cook*, the Supreme Court stated, 'reliable hearsay, such as a presentence investigation report, may be relied upon by the trial judge.' *Cook*, 83 Ohio St.3d at 425, 700 N.E.2d at 587. R.C. 2950.09(B)(1) permits either side to call witnesses and *expert witnesses*, and we see no reason, absent privilege or any other legal restraint on testimony, to limit who might testify on matters of fact and, assuming relevance, to what that testimony may entail." (Emphasis added; citations omitted.)

The judgment of the trial court that H.B. 180 is constitutional is affirmed. That portion of its order finding appellant to be a sexual predator pursuant to R.C. 2950.09(C) is reversed. This case is remanded to the trial court for further proceedings consistent with this opinion.

This judgment of the trial court is affirmed in part, reversed in part, and the cause is remanded to the lower court for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

PORTER, A.J., and DYKE, J., concur.

DYKE, Judge, concurring.

I agree that the determination that appellant is a sexual predator should be reversed and remanded for a new hearing because there was insufficient evidence without consideration of the trial transcript. The majority strongly suggests that the trial court erred in refusing a court-ordered psychiatric evaluation because it prevented appellant from presenting evidence. Whether the trial court failed to consider all the relevant evidence and whether an indigent defendant is entitled to a court-ordered psychiatric evaluation to prove he is not a sexual predator are two entirely separate issues. The latter issue was never raised at trial because appellant requested a psychiatric evaluation to determine whether he was incompetent. Appellant did not argue that a psychiatric evaluation would help him prove that he was not a sexual predator.

The extent of the right to a court-appointed psychiatrist to prove factual issues in a sexual predator determination is an important issue of first impression. This issue was not raised at trial or briefed on appeal. It is improper for this court to rule upon this issue, particularly when the parties were not given an opportunity to brief the matter. See *State v. Casalicchio* (1991), 58 Ohio St.3d 178, 184, 569

N.E.2d 916, 922–923 (Resnick, J., concurring in part), *C. Miller Chevrolet, Inc. v. Willoughby Hills* (1974), 38 Ohio St.2d 298, 67 O.O.2d 358, 313 N.E.2d 400, fn. 3; *State v. Hylton* (1991), 75 Ohio App.3d 778, 783, 600 N.E.2d 821, 824.

It was not plain error for the court to deny a psychiatric evaluation requested for the purpose of gathering factual evidence. Whether the court must provide an indigent defendant with a psychiatric evaluation to prove factual issues requires a balancing of the burden to the state and the risk of error in denying the assistance. See *Ake v. Oklahoma* (1985), 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53. The extent of this right in a sexual predator case is unclear. For the guilt phase of a criminal case, a court-appointed psychiatrist is required only if sanity is a significant factor, and it is reasonably probable that the psychiatrist's testimony would aid in the defense. See *Ake, supra; State v. Powell* (1990), 49 Ohio St.3d 255, 552 N.E.2d 191. In a capital sentencing proceeding, a court-appointed psychiatrist is necessary to counter only psychiatric evidence of future dangerousness presented by the state. *Powell, supra*, at 258, 552 N.E.2d at 195–196. In a sexual predator determination hearing, the due process rights are akin to those of a sentencing hearing. See *State v. Ward* (1999), 130 Ohio App.3d 551, 720 N.E.2d 603. Even if the standard of the guilt phase is used, it is unclear in this case whether there is a reasonable probability that a psychiatric evaluation would prove that appellant was not a sexual predator. Therefore, we cannot say that plain error occurred. In any case, this issue should not be ruled upon because the parties had no opportunity to brief the issue.

Whether the trial court erred in denying appellant's motion for a psychiatric evaluation to determine incompetence is a moot issue, given that the sexual predator determination is reversed. I will note that in a probation hearing, there is a due process right to a competency hearing when there is a substantial basis for the suggestion that appellant is incompetent. See *State v. Bell* (1990), 66 Ohio App.3d 52, 583 N.E.2d 414; *State v. Qualls* (1988), 50 Ohio App.3d 56, 552 N.E.2d 957; *Qualls, supra*. If the defendant is incompetent to understand the proceedings, the due process rights to be heard, present witnesses, and confront witnesses are essentially rendered void. *Id.* In a sexual predator hearing, the due process rights are similar to a probation revocation hearing. See *Ward, supra;* R.C. 2950.09(B)(1). It is in the discretion of the trial judge whether a competency evaluation is needed. *Qualls, supra.* It is not necessary to determine whether the trial court erred in this regard because the issue is moot.