JOURNAL ENTRY AND OPINION
Defendant-appellant Raymond Arthur, Jr. appeals from an order of the trial court classifying him as a sexual predator.
Defendant was indicted approximately fourteen years ago on April 6, 1987 for rape and gross sexual imposition against a four-year-old girl. The offenses allegedly occurred approximately one year earlier in July 1986 when defendant placed his finger in and licked the child's vagina. Defendant admitted his guilt and attended counseling months before any indictment was filed. He was found to be competent during the course of the proceedings, but did not appear for the scheduled for trial.
On December 13, 1988, almost two and one-half years after the incident, defendant appeared and pleaded guilty to an amended charge of rape which deleted the age of the victim. The gross sexual imposition charge was dismissed as part of the plea bargain. Defendant was sentenced on March 10, 1989, after the trial court considered the nature of the crime, defendant's history, and other relevant statutory factors, to a mid-range indefinite sentence of seven to twenty-five years imprisonment.
Approximately eleven years later, on January 14, 2000, the prosecution filed a State's Request for Pursuit of Sexual Predator Adjudication. The document stated that the Ohio Department of Rehabilitation and Corrections (ODRC) had recommended defendant be adjudicated as a sexual predator and that he was scheduled for a parole hearing in January, 2000. There was no evidence that defendant committed another sexually oriented offense at any time, including the two and one-quarter year period of freedom between the incident and his guilty plea and the approximately eleven subsequent years of incarceration for the offense.
Defendant filed a motion to dismiss. His motion argued that the sexual predator statute violated separation of powers principles, violated due process, had an unclear burden of proof, and violated Article I Sections 1
and 2 of the Ohio Constitution. The prosecution filed a brief in opposition to the motion to dismiss.
The trial court scheduled the matter for a hearing on February 16, 2000. Defendant appeared with counsel from the Public Defender's office. The parties made oral arguments concerning the motion to dismiss. Defendant also argued that the hearing was premature because he was not eligible for release from prison for approximately two years. The trial court denied the motion to dismiss and proceeded with the hearing.
The prosecutor read the original indictment for the rape of the child and the journal entry indicating that defendant pleaded guilty to the charge without a specification of the age of the victim. The prosecutor also read the trial court's sentencing entry, which imposed the mid-range indefinite sentence. The prosecutor thereafter referred to the ODRC recommendation form requesting a sexual predator hearing. The document asserted that defendant (1) had committed a prior sexually oriented offense, and (2) did not participate in sex offender counseling. As noted below, the trial court ultimately corrected this first assertion, but not the second one concerning the lack of counseling.
The prosecutor read from a police report compiled from an interview with the victim and her mother in January 1987, six months after the incident. The report stated that defendant and the victim's mother dated each other. On an evening when defendant spent the night at her house, she was awakened by her daughter crying. The child told a doctor during a January 28, 1987 interview that defendant placed his finger in her vagina. The mother stated the child told her on the evening of the incident only that defendant was in her room. She stated the child told her the next day that defendant licked her vagina. Her interview revealed that she continued dating defendant through December 1986 and he was over at their house two days before the police interview.
After initially denying the incident, defendant admitted it and, several months before any prosecution was initiated, sought to get the child's mother to go to counseling with him. The mother stated to the police she did not go to counseling with defendant, but that he nevertheless attended counseling by himself with a worker by the name of Jean from the Center of [sic] Human Services. (Tr. 21.) The trial court, (Tr. at 44), the dissent, (Postat 3), and the prosecutor's brief on appeal, (Id. at 6), each continue to assert, despite the prosecution's own uncontradicted evidence, that defendant never attended counseling.
During the hearing, the prosecution also presented reports from the Bureau of Criminal Investigation (BCI) and from the prison authorities. Defendant had several charges before this offense. He was convicted in 1974 for breaking and entering in North Carolina, and had a 1983 misdemeanor conviction in Lakewood Municipal Court arising from a dispute with his former wife regarding custody of their son. The trial court ultimately found contrary to the HB 180 form that this misdemeanor custody conviction was not a sexually oriented offense.[1] (Tr. 38.) The record shows that defendant was placed on probation for these two offenses and had not previously served a prison term.
The BCI report indicated that defendant admitted to the crime in July 1986, but stated that he was intoxicated. The trial court, (Tr. at 47), and dissent, (Post at 3), each assert that defendant never sought alcohol treatment, but the presentence report prepared at the time of his original sentencing reveals that he attended Alcoholics Anonymous (AA) meetings after the offense and before his conviction.
The prosecution's documents reveal that defendant did not report any history of psychiatric treatment or hospitalization. The warden stated in his memorandum that defendant did not require mental health evaluation, treatment, or services while incarcerated. No current mental health evaluation was prepared. Finally, the warden's memo stated that defendant committed sixteen infractions over the course of more than a decade in prison but did not specify what they were or give any details.[2]
Defense counsel argued that defendant admitted the crime and served eleven years of a seven-to twenty-five-year sentence. He argued there was no evidence to show that defendant was likely to commit a sex crime in the future. His prison file indicated he had a good attitude toward inmates and staff. None of his two prior convictions or sixteen prison rules violations was for sex offenses. Defendant attended counseling before he was even charged with the crime. The record indicates he had some access to the child for six months after the incident in the case at bar, but there is no allegation of any further offense.
Moreover, there is no evidence or allegation that defendant committed another sex crime, or any other offense, during the more than two year period between the July 1986 incident and his March 1989 imprisonment, or during his subsequent eleven years of incarceration. There is no likewise no evidence that defendant ever committed any sex offense against either of his own two children. The North Carolina property offense was twenty-five years earlier and the Ohio misdemeanor was seventeen years earlier. Defense counsel argued he was convicted of only a single offense and there was no clear and convincing evidence he was likely to commit another such offense in the future.
Following the prosecutor's final closing argument, the trial court made an extensive set of comments and completed a form journal entry finding defendant to be a sexual predator. Defendant timely appeals, raising four assignments of error.
Defendant's first assignment of error follows:
 THE TRIAL COURT ERRED WHEN IT DECIDED TO CONDUCT THE SEXUAL PREDATOR HEARING AGAINST APPELLANT WHERE THE APPELLANT WILL NOT BE RELEASED FROM PRISON FOR AT LEAST TEN YEARS IN VIOLATION OF THE REVISED CODE AND BOTH THE OHIO AND UNITED STATES CONSTITUTION.
This assignment lacks merit.
Defendant argues that the trial court's decision to hold a hearing to determine whether he was a sexual predator was premature. He contends that the trial court should have delayed making a finding until immediately before his release from prison.
This court and others have already rejected this argument concerning the timing of the sexual predator determination. See e.g., State v. Steele (Sept. 7, 2000), Cuyahoga App. No. 76205, unreported at p. 10; State v. Dunwoody (Aug. 30, 1999), Perry App. No. CA-97-65, unreported; State v. Nosic (Feb. 1, 1999), Stark App. No. 1997CA00248, unreported.
Accordingly, defendant's first assignment of error is overruled.
Defendant's second assignment of error follows:
 THE EVIDENCE IS INSUFFICIENT, AS A MATTER OF LAW, TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT APPELLANT IS LIKELY TO ENGAGE IN THE FUTURE IN ONE OR MORE SEXUALLY ORIENTED OFFENSES.
This assignment is well taken.
Defendant argues that the prosecution did not present sufficient evidence for the trial court to find, by clear and convincing evidence, that he is a sexual predator. He emphasizes that unlike the two other sex offender classifications which are proved merely by prior conviction data a sexual predator finding involves a prediction of the future. The sexual predator determination requires more: that is, evidence the offender is likely to engage in the future in one or more sexually oriented offenses. Not only must it be probable (more likely than not) that such a future offense will occur, but such likelihood must be proven by the heightened standard of clear and convincing evidence. He argues that his single sex crime fourteen years earlier, without recurrence in more than two years when he underwent counseling before his incarceration or eleven years since, is insufficient to satisfy this standard and support the trial court's conclusion that he is likely to commit another such offense.
It is well established that courts must consider the heightened standard of proof required by the governing substantive law when courts evaluate the sufficiency of the evidence to support a claim. See e.g., State v. Eppinger (2001), 91 Ohio St.3d 158, 163; Grau v. Kleinschmidt (1987), 31 Ohio St.3d 84; Landsdown v. Beacon Journal Pub. Co. (1987),32 Ohio St.3d 176, 180-181. The clear and convincing evidence standard requires more than the mere preponderance of evidence and must be sufficient to provide a firm belief or conviction regarding the fact that must be proved. Satisfying this standard in this context requires there be something of substance from which one could draw a logical conclusion concerning the likelihood of recidivism to reach a firm belief or conviction that defendant is likely to commit a sexually oriented offense in the future.
Applying this standard, several published appellate cases have cautioned against the indiscriminate classification of offenders and held that a single sex conviction was insufficient to establish the likelihood of future recurrence to support a sexual predator determination. For example, in State v. Ward (1999), 130 Ohio App.3d 551, this court expressly rejected the argument that the sexual predator statutes established a one strike and you're out policy. Id. at 561. Ward thereafter stated as follows:
 * * * simply committing a single sexually oriented offense is not proof, without further evidence or other compelling facts, that the offender is "likely to engage in the future in one or more sexually oriented offenses." Had the legislature intended the result argued by the state, it would have done away with the hearing and weighing of evidence and simply classified any person committing a sexually oriented offense as a sexual predator.
 In this case, the only evidence demonstrating that defendant was "likely to engage in the future in one or more sexually oriented offenses" consisted solely of proof of defendant's conviction on the felonious sexual penetration charge, the age of the victim, and the threat of force both in committing the offense and ensuring the victim's silence after the offense. All this evidence shows is that defendant committed a sexually oriented offense — it does not show by clear and convincing evidence that defendant is more likely than not predisposed to commit another sexually oriented offense. State v. Hicks (June 26, 1998), Hamilton App. No. C-970533, unreported.
Id. at 561.
Other courts have reached the same conclusion, particularly when a substantial period of time has already elapsed since the offense without a recurrence as in the case at bar. State v. Hicks (1998),128 Ohio App.3d 647, cited in Ward, stated:
 We refuse to take that quantum leap and hold that the concomitant commission of a sexually oriented offense and an aggravated burglary 15 years ago is clear and convincing evidence that the offender is likely to commit another sexually oriented offense.
Id. at 650. Another court recognized the same principles even though the period after the sex offense was punctuated by defendant's commission of non-sex crimes:
 Such a long period of time [25 years in-and out-of-prison] without additional violations in and of itself weighs strongly against a finding that appellant has a propensity for committing further sexually oriented offenses.
State v. Parker (1999), 134 Ohio App.3d 660, 666.
As in these cases, defendant's one sex crime conviction is accompanied by a long delay after the conviction. R.C. 2950.01(E) defines a sexual predator in the present tense as one who, at the time of the determination, is likely to commit a future sex crime. The key is proving, by clear and convincing evidence, a current likely disposition to commit a future sex crime.
This court has acknowledged these principles and reversed a series of sexual predator determinations on sufficiency of the evidence grounds when the finding was based on a single dated sex offense conviction and when no current information concerning the offender's disposition toward future sex offenses has been presented as in the case at bar. See e.g. State v. Wilson (Oct. 26, 2000), Cuyahoga App. No. 77530, unreported; State v. Johnson (Sept. 30, 1999), Cuyahoga App. No. 74841, unreported; State v. Gregory (Sept. 30, 1999), Cuyahoga App. No. 74859, unreported; State v. Wimberly (Aug. 12, 1999), Cuyahoga App. No. 74652, unreported; and State v. Patterson (Feb. 11, 1999), Cuyahoga App. No. 72448, unreported.
The facts of the case at bar are strikingly similar to those in Wimberly, Patterson, and Gregory, which each involved child victims and an extended delay before a sexual predator determination was conducted. Nine years before the sexual predator determination in Wimberly, the defendant sneaked into the nine-year-old victim's bedroom to commit the gross sexual imposition. At the hearing, the prosecution presented nothing more than evidence of defendant's conviction of the single offense. This court vacated the sexual predator determination because the prosecution did not present clear and convincing evidence that defendant was likely to commit a sexually oriented offense in the future. Id. at pp. 4-5.
Patterson involved a thirteen-year lapse of time from the defendant's two criminal convictions: for rape and gross sexual imposition against a three-year-old girl. Gregory involved only a five-year lapse of time between defendant's single conviction for sexual battery of his girlfriend's twelve-year-old daughter. In each case, this court found the evidence, reviewed under the clear and convincing standard, was insufficient as a matter of law to show that defendant was likely to commit a sexually oriented offense in the future. Id.[3]
The dissent seeks to equate this case to State v. Wellman (May 18, 2000), Cuyahoga App. No. 76219, unreported, but the facts are distinguishable. Wellman was convicted of two distinct offenses over a period of time. In 1988 he placed his finger in the twelve-year-old victim's vagina. In the spring of 1989, he forced her to have sexual intercourse with him and used a pillow to cover her face so her brother could not hear her screams. The defendant was indicted ten years later and convicted of both offenses following a jury trial. This court affirmed the sexual predator determination, stating:
 The trial court ordered a presentence investigation report and stated it considered the relevant factors as set forth in R.C. 2950.09(B)(2). The trial court thereafter gave as its reasons for the determination the following: Angel's age at the time of the offenses; the fact that appellant `used his relationship with the victim's mother to facilitate' the offenses; the fact that appellant committed two separate acts over a period of time; and also appellant's use of force during the rape to ensure Angel's silence. The trial court further cited additional evidence adduced at trial, viz, appellant's `pattern' of engaging `in relationships with older women whereby he would have access' to young females.
Id.at 7. Wellman was eighteen years old when he began dating the victim's mother, who was thirty-four and almost twice his age, so that he could have access to her twelve-year-old daughter.
The case at bar does not involve these facts: The presentence report was eleven years old,[4] defendant did not commit two sex crimes in different years, defendant never had sexual intercourse with the victim, there is no claim that defendant used the same kind of force on the victim, and there was no evidence that defendant selected women to get at their children. The latter fact alone repeatedly selecting women to prey on their children shows precisely the kind of current evidence of predation that is absent from the case at bar.
The dissent does not address Ward, Johnson, Wimberly, or Gregory, each of which reversed a sexual predator determination in a case involving a single conviction followed by a lapse of time before the determination as in the case at bar. It purports instead to distinguish only Patterson and then on facts not stated in that case that the offender worked for and completed a sex offenders program and was being psychologically evaluated. (Post at 3, n. 2.) Even if we assume these facts in Patterson, the cases are substantially the same. As noted above, defendant in the case at bar attended counseling months before he was charged with any crime. (Tr. 21). Although it is not clear whether he completed the program, he did not re-offend in the two and one-quarter years before he was incarcerated or the eleven years since.
The dissent argues the case at bar is not like four other cases it cites in which, because no evidence was presented beyond the fact of one conviction, the trial court's decision was reversed by this court.[5]
(Post at 3.) None of the four cited cases was reversed, however, on that basis. Each of the four cited cases involved something beyond old conviction data that was not considered by the trial court. Three cases specifically involved counseling which was not considered by the trial court just as in the case at bar: Grimes involved counseling and the trial court's failure to address defendant; Casper involved completed sex and alcohol programs; and Ferrell involved counseling. In the fourth case, Thompson, the trial court did not mention the statutory factors or authorize a psychological evaluation despite defendant's odd behavior.
In State v. Cook (1998), 83 Ohio St.3d 404, the Supreme Court held that trial courts were not required to discuss all the statutory factors. Id. at 426. However, more recently in Eppinger the Court stated that in a model hearing, the trial court should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism. Id. at 166. Although trial courts are not required to conduct model hearings, we agree with these cases that stating on the record conclusions that are unsupported and, in fact, contradicted by the prosecution's own undisputed evidence calls into question whether the resulting decision is clear and convincing.
The only new evidence beyond old conviction data in the case at bar was defendant's prison record. There is no evidence that he committed any sex offense in prison. The dissent suggests he did not repeat the offense because there are no little girls in prison, but this explanation fails to account for the fact that defendant did not commit a sex offense for more than two and one-quarter years before he even went to prison. Defendant continued to have access to the same child for six months after the incident, but there is no allegation that he committed a repeat offense. There is no allegation that he committed a sex offense against either of his own two children. The dissent also argues that defendant did not complete treatment programs while in prison, but ignores that he attended counseling and AA meetings before he was imprisoned and did not re-offend during this period.
Finally, the dissent refers to defendant's prison infractions, none of which involved sex offenses. It is not clear how the desire to have snacks clearly and convincingly shows that he is likely to commit a sex crime in the future. It is an overstatement to say they reveal defendant's general unwillingness either to abide by the law or conform his behavior to that which is appropriate. (Postat 2.) Clear and convincing evidence requires some substantial basis for reaching a firm belief or conviction that defendant is likely to commit a future sex crime. Compare e.g, State v. Bush (Dec. 15, 2000), Montgomery App. No. 18273, unreported (prison infractions included violation of rules prohibiting homosexual sex).
In short, the record contains little to bridge the gap and provide a prediction of the probable future, such as a diagnosis of pedophilia, a risk analysis, or an expert opinion that defendant is likely to commit a future sex crime. Armchair assertions of a generalized anti-social character are no substitute for such evidence. As in Ward, Johnson, Wimberly, and Gregory, we find the evidence submitted was insufficient to support the required finding. Contrary to the dissent, a determination concerning the sufficiency of the evidence does not require any showing that the trial court subsequently mis-evaluated the insufficient evidence presented by failing to consider some of it.[6] Appellate courts do not simply defer to trial court rulings concerning the sufficiency of the evidence.
The dissent closes by citing four additional cases to support its argument that there is sufficient evidence in the case at bar.[7] The cases are readily distinguishable, however, because, unlike the case at bar, most of them involved multiple convictions for sex offenses before the sexual predator determination. As noted above, Wellman involved two rape convictions; Goodall involved kidnaping and gross sexual imposition convictions after a prior forcible child rape conviction; and Delgado involved two rape convictions. The fact that these defendants were convicted of more than one sex offense provides more credence to the conclusion that they would be likely to do so again in the future than if they had been convicted of only one offense.
Hogan involved only a single rape conviction, but the sexual predator determination was made without the extended delay in the case at bar. The sexual predator determination was made only three years after the conviction. The determination was also based on evidence that the offender committed sexual assaults against the victim for five years before the indicted offense. No such evidence exists in the case at bar. The Evidence Rules help to understand the significance of an eleven-year interval; for example, they recognize that the relevance of a conviction is diminished by the lapse of time since the conviction. See Evid.R. 609(B) (establishing a ten-year guideline concerning the use of prior convictions for credibility impeachment purposes).
Indiscriminately classifying every offender as a sexual predator without regard to the likelihood of recurrence dilutes the meaning of the label and undermines the purpose of the statute:
 Without accuracy in the sexual predator determinations made by trial courts, however, society and its limited law enforcement resources risk being flooded with a number of persons who may or may not deserve to be classified as high-risk individuals, with the consequence of diluting both the purpose behind and the credibility of the law. This result could be tragic for many.
E.g., State v. Casper, supra; and State v. Thompson, supra.
Predicting the future is subject to uncertainty. We do not require unattainable perfection. But, even within the limits attendant to that task, the evidence must furnish a basis for logically choosing between two alternative possibilities. The clear and convincing evidence standard does not permit mere conjecture or speculation. Using that standard, we find the evidence was not sufficient to establish that defendant is likely to commit a sexually oriented offense in the future.
Accordingly, defendant's second assignment of error is sustained.
Defendant's third assignment of error follows:
 OHIO'S SEXUAL PREDATOR STATUTE VIOLATES THE CONCEPTS OF SEPARATION OF POWERS BECAUSE IT FORCES A TRIAL COURT TO INVESTIGATE, PROSECUTE AND ADJUDICATE INDIVIDUALS AS SEXUAL PREDATORS.
This assignment lacks merit.
Defendant argues that R.C. 2950.09 is unconstitutional because it violates separation of powers principles. Defendant cites as authority an opinion of the common pleas court in State v. Copeland, Cuyahoga County Common Pleas Court Case No. CR-213510. After the parties filed briefs in this appeal, however, this court reversed the trial court's judgment in Copeland. See State v. Copeland et al. (Dec. 18, 2000), Cuyahoga App. Nos. 77333, 77500, 77501, 77502 and 77517, unreported. Defendant's separation of powers arguments are like those in Copeland and lack merit for the same reasons.
Accordingly, defendant's third assignment of error is overruled.
Defendant's fourth assignment of error follows:
 THE ADJUDICATION PROVISIONS VIOLATE THE DUE PROCESS CLAUSES OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I OF THE OHIO CONSTITUTION, BECAUSE OHIO'S CLASSIFICATION SCHEME IS SYSTEMATICALLY FLAWED.
This assignment lacks merit.
Defendant argues that the sexual predator statutes violate due process because they give the trial court insufficient guidance, do not afford him an opportunity to present a meaningful defense, and do not require that written notice be provided to him.
This court rejected defendant's precise argument concerning the statute's alleged failure to provide sufficient guidance in State v. Steel, supra at p. 10. This court has already likewise determined that the sexual predator hearing comported with due process by providing the defendant with an opportunity to defend and cross-examine any witnesses against him. State v. Ward (1999), 130 Ohio App.3d 551, 559.
Defendant's remaining argument about lack of notice is unpersuasive. The record shows that he was given notice of the sexual predator hearing. He made no requests for discovery of any kind to determine the prosecution's evidence. The record indicates that defense counsel observed a copy of the ODRC H.B. 180 form before the hearing. It appears from the transcript that defense counsel had been informed before the hearing of all other information that was presented. Under the circumstances, defendant has not shown any denial of due process.
Accordingly, defendant's fourth assignment of error is overruled.
The judgment of the trial court classifying defendant as a sexual predator is vacated.
It is, therefore, ordered that appellant recover of appellee his costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
TIMOTHY E. McMONAGLE, J., CONCURS; KENNETH A. ROCCO, J., CONCURS AND DISSENTS (See Concurring and Dissenting Opinion).
[1] The original charge was apparently abduction, a felony, which could not have been adjudicated in a municipal court. See R.C. 1901.20.
[2] The only indication in the record concerning the prison infractions was that defendant had food to snack on in some manner prohibited by the rules.
[3] Ward involved a single conviction for placing a finger in the child's vagina as in the case at bar, followed by only a three-year, rather than an eleven-year, delay before making the sexual predator determination.
[4] The dissent asserts that the trial court first considered the presentence report. (Post at 2.) It is not clear whether the trial court did so. The parties did not discuss the presentence report. Moreover, the presentence report states that defendant attended Alcoholics Anonymous meetings, but the trial court explicitly found — without any record support or explanation — and the dissent repeats as fact, that defendant never sought treatment for alcoholism. (See Tr. at 47; Post at 3.)
[5] State v. Grimes (Apr. 12, 2001), Cuyahoga App. No. 78496, unreported; State v. Casper (June 10, 1999), Cuyahoga App. Nos. 73061, 73062, 73063, and 73064, unreported; State v. Thompson (1999),140 Ohio App.3d 638; and State v. Ferrell (Mar. 18, 1999), Cuyahoga App. No. 72732, unreported.
It should be noted that Grimes, Casper, and Thompson each involved multiple, rather than a single, sex conviction.
[6] Even if such a showing were required, however, the gap in information directed toward the future is compounded by the trial court's (1) finding that defendant did not attend counseling when the prosecution's own undisputed evidence was that he had done so, and (2) failure to account for the fact that defendant did not commit another sex offense for more than two years before he was incarcerated in the case at bar.
[7] State v. Wellman (May 18, 2000), Cuyahoga App. No. 76219, unreported; State v. Goodall (July 6, 2000), Cuyahoga App. No. 76491, unreported; State v. Delgado (Apr. 22, 1999), Cuyahoga App. No. 73099, unreported; and State v. Hogan (Mar. 18, 1999), Cuyahoga App. No. 73228, unreported.