DECISION.
{¶ 1} Defendant-appellant Anthony Seay pleaded guilty to aggravated robbery[1] and rape.[2] There was an agreed sentence of four years. But prior to the sentencing hearing, Seay filed a Crim.R. 32.1 motion to withdraw his guilty plea. The trial court denied his motion and then proceeded to classify Seay as a sexual predator. Seay now challenges the trial court's denial of his Crim.R. 32.1 motion and his sexual-predator classification. But because the trial court did not err by denying Seay's Crim.R. 32.1 motion or classifying him as a sexual predator, we affirm.
 I. A Repulsive Crime {¶ 2} On July 30, 2005, Vermia Banks, a mother of four, was asleep at her residence when Seay knocked on the door. (Seay was the biological father of one of her four children). That evening, she had had consensual sexual intercourse with a man named Andre, and they were asleep in her bed. When no one answered the door, Seay pried the window screen out, reached in to unlock the door, and entered.
 {¶ 3} Seay told Andre to leave and forced Banks upstairs into the bathroom. He used a washcloth to wipe her vaginal area with soap. He then digitally entered her vagina before forcing her to submit to vaginal intercourse. Seay then warned Banks that he did not want to catch another man in her house again.
 {¶ 4} In exchange for pleading guilty to aggravated robbery and rape, Seay agreed to four years' incarceration. The trial court substantially complied with Crim.R. 11 prior to accepting Seay's guilty plea. The trial court then provided notice of the sexual-offender-classification hearing and ordered a clinic evaluation before sentencing Seay.
 {¶ 5} Before the sentencing and sexual-predator-classification hearing, Seay moved to withdraw his guilty plea. At a hearing on the motion, Seay presented a notarized letter from Banks indicating that she was forced to prosecute Seay and that she did not want to proceed with the case. In rebuttal, the state presented the testimony of Cincinnati Police Officer Donald Konicki, who stated that Banks was never forced to prosecute Seay. Officer Konicki also testified that he had learned that Banks had recently moved into Seay's mother's residence and believed that this was the impetus for the letter and Crim.R. 32.1 motion. But Seay's mother denied that Banks lived with her, although she testified that she had custody of Seay's and Banks's child.
 {¶ 6} The state also called Sarrah Kelley, a personal crimes victim advocate who testified that she had spoken with Banks on the date of the grand-jury hearing, and that Banks had wished to prosecute on that date. The trial court then denied Seay's motion and proceeded to conduct the sexual-predator-classification hearing.
 {¶ 7} At that hearing, the trial court admitted the court clinic report and records from the Ohio Department of Corrections. Dr. Dreyer evaluated Seay for the court clinic report and found that Seay fell into the high-risk category on the Static-99 test.
 {¶ 8} The trial court found (1) that Seay had a prior conviction and was on parole for a sexually oriented offense, corruption of a minor, for which he was a registered sexually oriented offender; (2) that he had displayed cruelty towards Banks; and (3) that he was at high risk to reoffend according to the Static-99 test. The trial court then classified Seay as a sexual predator.
 {¶ 9} Seay now argues that that the trial court erred by (1) overruling his Crim.R. 32.1 motion to withdraw his guilty plea, and (2) determining that he was a sexual predator under R.C. 2950.09.
 II. Motion to Withdraw Guilty Plea {¶ 10} Under Crim.R. 32.1, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."
 {¶ 11} The rule provides a standard to evaluate post-sentence motions to withdraw a guilty plea — manifest injustice. But the rule does not provide a standard for presentence motions, as is the case here. To resolve this question, the Ohio Supreme Court has analogized Crim.R. 32.1 to its federal counterpart, Fed.R.Crim.P. 32(d).[3] In doing so, the court concluded that the decision to grant or deny a defendant's Crim.R. 32.1 motion is within the sound discretion of the trial court. "One who enters a guilty plea has no right to withdraw it. It is within the sound discretion of the trial court to determine what circumstances justify granting such a motion."[4] And an abuse of discretion connotes an arbitrary, unreasonable, or unconscionable decision by the trial court.[5] Unreasonable means that no sound reasoning process supports the decision.[6]
 {¶ 12} But the Ohio Supreme Court also has construed Crim.R. 32.1 so that "a presentence motion to withdraw a guilty plea should be freely and liberally granted."[7] This creates an anomaly — a motion that should be freely and liberally granted, yet the denial of which is reviewed under an abuse-of-discretion standard. And as we have recognized before, "the myriad pronouncements of the appellate courts that these motions should be `liberally and freely' granted lose some meaning, if the standard is `abuse of discretion' with no guidelines whatever."[8]
 {¶ 13} Nevertheless, the Ohio Supreme Court has stated that "it must be recognized that a defendant does not have an absolute right to withdraw a plea prior to sentencing. Therefore, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea."[9]
 {¶ 14} And a trial court should analyze the numerous additional factors that should be weighed in considering a presentence motion to withdraw a guilty plea: "(1) whether the accused is represented by highly competent counsel; (2) whether the accused was given a full Crim.R. 11 hearing before entering the plea; (3) whether a full hearing was held on the motion; (4) whether the trial court gave full and fair consideration to the motion; (5) whether the motion was made within a reasonable time; (6) whether the motion sets out specific reasons for the withdrawal; (7) whether the accused understood the nature of the charges and possible penalties; and (8) whether the accused was perhaps not guilty of or had a complete defense to the charge or charges."[10]
 {¶ 15} Here, it appears that Seay was represented by highly competent counsel since he received a favorable plea bargain for two first-degree felonies. The trial court complied with Crim.R. 11 when Seay entered his plea, conducted a full hearing on the Crim.R. 32.1 motion, and gave consideration to the withdrawal request. But the trial court was suspicious of Banks's new living arrangements with Seay's mother and believed that there was pressure for Banks to state that she did not want to prosecute Seay. We are not persuaded that the trial court acted unreasonably in denying this motion. Thus, Seay's first assignment of error is overruled.
 III. Sexual-Predator Classification {¶ 16} In his second assignment of error, Seay argues that the trial court erred by classifying him as a sexual predator. Seay contends that the trial court relied too heavily upon his prior conviction for a sexually oriented offense and the Static-99 test indicating that he was at a high risk to reoffend, and that there was not clear and convincing evidence to classify him as a sexual predator.
 {¶ 17} A sexual predator is defined as a "person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses."[11] Before a trial court may adjudicate an offender as a sexual predator, it must first conduct a sexual-predator hearing in the manner described in R.C. 2950.09(B)(1).
 {¶ 18} In making a determination whether an offender is a sexual predator, the trial court must consider all relevant factors, including, but not limited to, the following: (1) the offender's age; (2) the offender's prior criminal record; (3) the age of the victim; (4) whether the offense involved multiple victims; (5) whether the offender used drugs or alcohol to impair the victim; (6) whether the offender completed any sentence imposed for a prior criminal offense or participated in available programs for sexual offenders; (7) any mental illness or mental disability of the offender; (8) the nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim, and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse; (9) whether the offender, during the offense, displayed cruelty or made one or more threats of cruelty; and (10) any additional behavioral characteristics that contributed to the offender's conduct.[12]
 {¶ 19} After the trial court reviews the testimony and evidence presented at the sexual-predator hearing and considers the factors specified in R.C. 2950.09 (B)(3), it "shall determine by clear and convincing evidence whether the offender is a sexual predator."[13]
Accordingly, we must examine the record to determine whether there was sufficient evidence before the trial court to classify Seay as a sexual predator by a clear and convincing degree of proof. Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.[14]
 {¶ 20} To ensure compliance with the applicable principles of law and to provide fairness in sexual-predator hearings, the Ohio Supreme Court, in State v. Eppinger, adopted a model procedure for sexual-offender-classification hearings.[15] The model procedure provided by Eppinger delineates three objectives for every sexual-predator hearing: (1) it is critical that a record be created for review; (2) an expert may be required to assist the trial court in determining whether the offender is likely to commit a sexually oriented offense in the future; and (3) the trial court should consider the statutory factors listed in R.C. 2950.09(B)(3) and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the defendant's likelihood of recidivism.[16]
 {¶ 21} Here, the trial court fully complied with Eppinger and discussed on the record the evidence and factors that led to its decision to designate Seay as a sexual predator. We conclude from our review of the record that there was sufficient evidence to support the trial court's adjudication of Seay as a sexual predator. Seay pleaded guilty to raping Banks. He had a prior conviction and was on parole for a sexually oriented offense, corruption of a minor, for which he was a registered sexually oriented offender. And the Static-99 test indicated that Seay had a high risk of reoffending. There was sufficient credible evidence for the court to classify Seay as a sexual predator. Thus, his second assignment of error is overruled.
 {¶ 22} Accordingly, we affirm Seay's conviction and the trial court's decision to classify him as a sexual predator.
Judgment affirmed.
GORMAN, P.J., and SUNDERMANN, J., concur.
[1] R.C. 2911.11(A)(1).
[2] R.C. 2907.02(A)(2).
[3] See State v. Xie (1992), 62 Ohio St.3d 521, 526,584 N.E.2d 715.
[4] Id.
[5] See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
[6] See AAAA Enterprises, Inc. v. River Place Community UrbanRedevelopment Corp. (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597;State v. Echols (1998), 128 Ohio App.3d 677, 669-670,716 N.E.2d 728.
[7] Xie, 62 Ohio St.3d 521, 526, 584 N.E.2d 715, citing State v.Peterseim (1980), 68 Ohio App.2d211, 213-214, 428 N.E.2d 863.
[8] See State v. Fish (1995), 104 Ohio App.3d 236, 239,661 N.E.2d 788.
[9] Xie, 62 Ohio St.3d 521, 527, 584 N.E.2d 715.
[10] Fish, 104 Ohio App.3d at 240, 661 N.E.2d 788, citingPeterseim, 68 Ohio App.2d 211, 213-214,428 N.E.2d 863, State v.Mathis (May 30, 1990), 1st Dist. No. C-890286, and State v.Cloud (1993), 91 Ohio App.3d 366, 632 N.E.2d 932.
[11] R.C. 2950.01(E).
[12] R.C. 2950.09(B)(3).
[13] R.C. 2950.09(C)(2)(c).
[14] See Cross v. Ledford (1954), 161 Ohio St. 469, 477,120 N.E.2d 118.
[15] See State v. Eppinger, 91 Ohio St.3d 158, 166, 2001-Ohio-247,743 N.E.2d 881.
[16] Id., citing State v. Thompson (1999), 140 Ohio App.3d 638,748 N.E.2d 1144.