OPINION
{¶ 1} Appellant, Jeffrey W. Swank, appeals the sentence of the Lake County Court of Common Pleas following his guilty plea to two counts of rape and attempted kidnapping and his classification as a Tier III sex offender under R.C. 2950.04. At issue is whether the sentence and classification are unconstitutional. For the reasons that follow, we affirm. *Page 2 
 {¶ 2} On August 17, 2007, the Lake County Grand Jury returned an indictment against appellant charging him with three counts of rape, felonies of the first degree, in violation of R.C. 2907.02(A)(2), and one count of kidnapping, a felony of the first degree, in violation of R.C. 2905.01(A)(4).
 {¶ 3} On November 29, 2007, appellant, pursuant to a plea bargain, withdrew his formerly-entered not guilty plea and entered a guilty plea to two counts of rape as charged in the indictment and one count of attempted kidnapping, a felony of the second degree, in violation of R.C. 2929.23 and 2905.01(A)(4).
 {¶ 4} Appellant did not file the transcript of his guilty plea hearing. However, his "Written Plea of Guilty and Judgment Entry," filed on November 30, 2007, reflects the following: (1) the trial court advised appellant of his constitutional rights as outlined in Crim. R. 11 and he understood and waived each of these rights and was "voluntarily pleading `Guilty' of [his] own free will;" (2) he understood his guilty plea constituted an admission that he committed the offenses to which he pled guilty; (3) he understood that for each rape offense to which he pled guilty, he could be sentenced to three, four, five, six, seven, eight, nine, or ten years in prison and that for attempted kidnapping, he could be sentenced to two, three, four, five, six, seven, or eight years in prison; and (4) he understood that "the Court could run some or all of [his] sentences consecutively" and that "[i]f the Court should choose to run all of [his] sentences consecutively, the maximum prison term would be 28 years * * *."
 {¶ 5} The trial court held a sentencing hearing on January 4, 2008. Prior to the imposition of sentence, the victim Christine Carson and the prosecutor provided to the court a detailed statement of the facts to which appellant did not object. Ms. Carson *Page 3 
had been invited to a large party in Madison Township by one of her co-workers on July 22, 2007. The only people Ms. Carson knew at the party were three of her co-workers. Late that night Ms. Carson could not find her friends so she went to her car to wait for them. Because several people were making noise by her car, she moved it away from the other parked vehicles. She then fell asleep. At about 3:00 a.m., she was awakened by appellant, a complete stranger to her, putting his hand over her mouth and grabbing her around her waist. He was not a guest at the party, but had heard it from the nearby trailer park where he lived. He found Ms. Carson's vehicle parked away from the other cars and chose her car to seek out a victim.
 {¶ 6} Appellant pulled Ms. Carson from her car and carried and dragged her toward the woods. Ms. Carson struggled with appellant and he pushed her against a truck several times, actually knocking her against the truck. During this struggle she lost her sandals. At one point appellant put his hand over Ms. Carson's mouth so she could not breathe and put his hands around her neck and choked her. She believed he was going to kill her.
 {¶ 7} Appellant carried Ms. Carson into the woods and she fell to the ground. She struggled with appellant for several minutes before he was able to remove her pants. He tried to rape her vaginally, but he was unable to achieve an erection. He then forced her to perform oral sex on him.
 {¶ 8} Appellant then tried to force Ms. Carson to submit to him performing oral sex on her. However, that did not last long because she continued to struggle with him and he eventually abandoned the effort. During this period, appellant achieved an erection. *Page 4 
 {¶ 9} Appellant then forced Ms. Carson to submit to vaginal intercourse during which he ejaculated inside her. When appellant was finished, she pleaded with him to let her go and said if he did, she would not tell anyone. He then let her go. Ms. Carson ran back to the party and, on her arrival, reported the rape to her friend who took her to the hospital. The prosecutor recommended the trial court sentence appellant to the maximum sentence of 28 years in prison.
 {¶ 10} Ms. Carson told the court that, because of this rape, "[her] life is ruined" and "her spirit of life [is] destroyed." She said that, due to the trauma she has suffered, she lost her job, is out of school, and has not been able to heal.
 {¶ 11} Appellant's counsel conceded Ms. Carson had sustained serious physical and psychological harm as a result of appellant's crimes. She said appellant understood he would not receive a minimum sentence, and she asked the court to sentence appellant to less than ten years in prison.
 {¶ 12} The trial court stated orally and in its judgment entry that it had considered the entire record, including the presentence report, the victim impact statement, letters from appellant and his family, counsel's argument, the purposes and principles of felony sentencing under R.C. 2929.11, and the seriousness and recidivism factors under R.C. 2929.12. The court noted Ms. Carson had suffered serious physical and psychological harm and commented that appellant's attack was a life-altering experience for Ms. Carson that had negatively impacted every aspect of her life.
 {¶ 13} The court considered appellant's juvenile adjudication for theft and his convictions of assault and drug abuse in 2002 and 14 traffic violations, the latter of which the court noted indicated a lack of respect for the law. *Page 5 
 {¶ 14} The court noted appellant had been given opportunities for treatment through the criminal justice system at the Lake/Geauga Center for Alcoholism and Drug Abuse in 2002 and did not take advantage of those opportunities. He continued to abuse alcohol and marijuana daily up to and including the day he raped Ms. Carson.
 {¶ 15} The court further noted that in the past appellant had been warned by his friends about his proclivity to engage in sexual misconduct when he abuses alcohol or drugs, but he paid no heed to these warnings.
 {¶ 16} The trial court sentenced appellant to a mandatory prison term of eight years on each of the two counts of rape and four years in prison for attempted kidnapping, with each sentence to be served consecutively, for a total of 20 years in prison.
 {¶ 17} The court advised appellant that, since he had pled guilty to rape, a sexually oriented offense, he is classified as a Tier III sex offender pursuant to R.C. 2950.01, and explained appellant's duty to register as a sex offender. Appellant signed a written form explaining his registration duties after the trial court read it to him.
 {¶ 18} Appellant appeals his sentence and classification as a sex offender, asserting four assignments of error. For his first assignment of error, he contends:
 {¶ 19} "THE TRIAL COURT'S CONSECUTIVE PRISON SENTENCE IS CONTRARY TO LAW AND IN VIOLATION OF THE APPELLANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS PROHIBITING DOUBLE JEOPARDY."
 {¶ 20} Under his first assigned error, appellant argues that, despite the Ohio Supreme Court's holding in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, his sentence is "contrary to law" because the record does not satisfy the R.C. 2929.14(E)(4) *Page 6 
factors, concerning which trial courts were previously required to make judicial findings before imposing consecutive sentences.
 {¶ 21} First, we note appellant failed to raise this issue at sentencing, and therefore waived it for purposes of appeal. State v.Payne, 114 Ohio St.3d 502, 506, 2007-Ohio-4642. Moreover, even if this issue had been preserved for appeal, there would have been no error.
 {¶ 22} In Foster, the Ohio Supreme Court severed R.C. 2929.14(E)(4) as unconstitutional. Foster at paragraphs three and four of the syllabus. In striking down this and other parts of Ohio's sentencing scheme, the Court held that "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus.
 {¶ 23} Post-Foster, "appellate courts must apply a two-step approach [in reviewing a felony sentence]. First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." State v. Kalish, ___ Ohio St.3d ___, 2008-Ohio-4912, at ¶ 4.
 {¶ 24} An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. Furthermore, when applying the abuse of discretion standard, an appellate court may not substitute *Page 7 
its judgment for that of the trial court. Pons v. Ohio State Med.Bd., 66 Ohio St.3d 619, 621, 1993-Ohio-122.
 {¶ 25} In Foster, the Court also held that two statutory sections, R.C. 2929.11 and R.C. 2929.12, still "apply as a general guide for every sentencing." Foster, supra, at 12-13. In sentencing an offender for a felony conviction, pursuant to R.C. 2929.11(A), a trial court must be guided by the overriding purposes of felony sentencing, which are "to protect the public from future crime by the offender and others and to punish the offender." To achieve these two purposes, the court must consider the need for incapacitating the offender, deterring him from future crime, rehabilitating the offender, and making restitution to the victim. Id. R.C. 2929.11(B) provides that a felony sentence must be reasonably calculated to achieve the two purposes set forth under R.C. 2929.11(A), commensurate with and not demeaning to the seriousness of the crime and its impact on the victim. The court must also consider the seriousness and recidivism factors under R.C. 2929.12.
 {¶ 26} Pursuant to Foster, "[t]he court is merely to `consider' the statutory factors." Id. at 14. Thus, "in exercising its discretion, a court is merely required to `consider' the purposes and principles of sentencing in R.C. 2929.11 and the statutory guidelines and factors set forth in R.C. 2929.12." State v. Lloyd, 11th Dist. No. 2006-L-185,2007-Ohio-3013, at ¶ 44. Appellant does not dispute that the trial court, in sentencing him, considered the purposes and principles of felony sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12.
 {¶ 27} Appellant pled guilty to two counts of rape, felonies of the first degree. He was therefore subject to a mandatory prison term for each of these offenses of three, *Page 8 
four, five, six, seven, eight, nine, or ten years. He also pled guilty to attempted kidnapping, a felony of the second degree, for which he was subject to an additional prison term of two, three, four, five, six, seven or eight years. The maximum sentence which the trial court could have imposed on appellant was, as appellant acknowledged in his written guilty plea, 28 years. Appellant's sentence of 20 years was thus within the statutory range for these offenses.
 {¶ 28} Because the trial court sentenced appellant within the statutory range and considered the statutory purposes and principles of felony sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12, we hold the trial court's sentence was not clearly and convincingly contrary to law. Further, the court did not abuse its discretion in sentencing appellant. We further hold that, post-Foster, the trial court is no longer required to make findings under the R.C. 2929.14(E)(4) factors and the record is not required to support those criteria.
 {¶ 29} Appellant next argues that, because the offenses of rape and attempted kidnapping are allied offenses under R.C. 2941.25(A), he could only be convicted of one of them, and, since he was convicted of both, his rights under the double jeopardy clause were violated. We note that appellant does not challenge his conviction of the two rape offenses, and, in any event, such objection would be unavailing because R.C. 2941.25(A) does not apply to multiple violations of the same statute.State v. Brock (June 26, 1998), 11th Dist. No. 96-T-5564, 1998 Ohio App. LEXIS 2908, *5-*6.
 {¶ 30} In this case, appellant pled guilty to the offenses. A guilty plea waives all appealable orders except for a challenge asserting that the defendant's guilty plea was not knowingly, intelligently, and voluntarily entered. State v. Spates, 64 Ohio St.3d 269, *Page 9 
272, 1992-Ohio-130. A guilty plea is considered knowing, intelligent, and voluntary if, before accepting the guilty plea, the trial court substantially complies with Crim. R. 11. State v. Nero (1990),56 Ohio St.3d 106, 108. "Substantial compliance means that, under the totality of the circumstances, the defendant subjectively understands the implications of his plea and the rights he is waiving." Id.
 {¶ 31} Here, appellant does not dispute that his guilty plea was knowingly, intelligently, and voluntarily entered. Moreover, appellant failed to file the transcript of the guilty plea hearing. An appellant has the duty to provide this court with the necessary transcripts of the record below in order to demonstrate any claimed error. See App. R. 9;State v. Fisher (June 27, 1997), 11th Dist. No. 96-P-0242, 1997 Ohio App. LEXIS 2827, *3. "When parts of the record necessary for the resolution of the assigned errors are omitted, there is nothing for the reviewing court to pass upon." State v. Johnson (July 24, 1992), 11th Dist. No. 91-L-107, 1992 Ohio App. LEXIS 3824, *5. "Thus, the reviewing court must presume the validity of proceedings below and affirm." Id., citing Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199. Consequently, because the record does not contain the transcript of the guilty plea hearing, we must presume the regularity and validity of all aspects of that hearing.
 {¶ 32} Additionally, we note that appellant's written guilty plea demonstrates the trial court complied with Crim. R. 11. That document reveals that, before accepting appellant's guilty plea, the trial court advised appellant that his plea constituted an admission that he had committed the offenses. The court also advised him that, by entering a guilty plea, he would be waiving his right to a jury trial at which the state would be required to prove his guilt beyond a reasonable doubt and the state could not *Page 10 
comment on his decision not to testify, his right to confront witnesses, and his right to compulsory process. The trial court also advised appellant of the statutory range of penalties provided for each offense. Further, the court explained that it could run some or all of his sentences consecutively. Appellant stated he understood each of these rights and the consequences of his guilty plea. Based on our review of the written guilty plea, we find the trial court substantially complied with the nonconstitutional requirements of Crim. R. 11 and strictly complied with the constitutional requirements of that rule. As a result, we find his guilty plea was knowingly, intelligently, and voluntarily entered.
 {¶ 33} Ohio courts have repeatedly upheld plea agreements that are knowingly, intelligently, and voluntarily entered into even if the defendant argues that his plea included allied offenses. State v.Jackson, 8th Dist. No. 86506, 2006-Ohio-3165, at ¶ 13; State v.Stansell (Apr. 20, 2000), 8th Dist. No. 75889, 2000 Ohio App. LEXIS 1726, *12-*13; State v. Graham (Sept. 30, 1998), 10th Dist. No. 97APA11-1524, 1998 Ohio App. LEXIS 4676, *9. "An agreement that is knowingly and voluntarily entered into by the defendant is sufficient to withstand any later attack even when the attack involves a plea to allied offenses." State v. Styles (Oct. 9, 1997), 8th Dist. No. 71052, 1997 Ohio App. LEXIS 4547, *8, citing, State v. Butts (1996),112 Ohio App. 3d 683.
 {¶ 34} "Therefore, the fact that his plea may have included allied offenses does not per se invalidate the plea." Jackson, supra, at ¶ 14. "The plea can be invalidated only if the defendant can show that his plea was not made knowingly, intelligently, or voluntarily." Id. As we have held that appellant has not met this burden, the fact that his plea may have contained allied offenses does not render his plea invalid. *Page 11 
 {¶ 35} In addressing a claim that two or more offenses are allied offenses, trial courts are guided by Ohio's multiple-count statute, R.C. 2941.25, which provides:
 {¶ 36} "(A) Where the same conduct by [the] defendant can be construed to constitute two or more allied offenses of similar import, the indictment * * * may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 37} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment * * * may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 38} In order to determine whether two or more offenses are allied offenses of similar import, a two-step analysis is used. State v.Cabrales, 118 Ohio St.3d 54, 57, 2008-Ohio-1625; Newark v. Vazirani
(1990), 48 Ohio St.3d 81, 83. First, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses. Cabrales, supra. With respect to the first step of the analysis, the Supreme Court of Ohio has held that kidnapping and rape are allied offenses of similar import, and the defendant may be convicted of both offenses if *Page 12 
each is committed with a separate animus. State v. Adams,103 Ohio St.3d 508, 526-528, 2004-Ohio-5845.
 {¶ 39} Under the second step of the analysis, the determination by a trial court as well as an appellate court as to whether the allied offenses were committed separately or with a separate animus as to each requires a review of the evidence of the defendant's conduct. Based on the victim and the prosecutor's undisputed statements regarding appellant's conduct, the attempted kidnapping and rapes were committed separately or with a separate animus. In Adams, supra, the Supreme Court of Ohio commented:
 {¶ 40} "In State v. Logan (1979), 60 Ohio St.2d 126, we established guidelines to determine whether kidnapping and rape are committed with a separate animus so as to permit separate punishment under R.C. 2941.25(B). We held in Logan that `where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive,or the movement is substantial so as to demonstrate a significanceindependent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions.' Id. at paragraph (a) of the syllabus. Conversely, the Logan court recognized that where the asportation or restraint "subjects the victim to asubstantial increase in risk of harm separate and apart from * * * theunderlying crime, there exists a separate animus." Id.,60 Ohio St.2d 126, at paragraph (b) of the syllabus." Id. at 135." (Emphasis added.)Adams at 526-527. *Page 13 
 {¶ 41} Here, appellant woke Ms. Carson by putting his hand over her mouth, grabbing her by the waist, and pulling her out of her car. He carried her away from an area near which some of the partygoers were sleeping in their cars and toward the woods. While appellant was carrying and dragging Ms. Carson, she was struggling and fighting with him. He pushed her against a truck several times, thus assaulting her multiple times. Appellant put his hand over her mouth and put his hands around her neck and choked her to the point where she believed he was going to kill her. After appellant carried her into the woods, she fell to the ground. She struggled with appellant for a period of time until he was able to remove her pants. He tried to rape her vaginally, but was unable to achieve an erection. He forced her to perform oral sex on him. Appellant forced Ms. Carson to submit to him giving her oral sex, but she did not submit and continued to struggle and, as a result, he abandoned this effort. While Ms. Carson was fighting with appellant, he achieved an erection. He then forced her to submit to vaginal intercourse.
 {¶ 42} While the Supreme Court in Logan held that any of the listed factors would suffice to evidence a separate animus, we observe that, here, several of the factors are present: First, appellant's confinement of the victim was clearly secretive. He carried her away and removed her from an area where other cars and partygoers were present to an isolated area in the woods where no one could come to her aid. Further, appellant's movement of the victim was substantial so as to demonstrate a significance independent of the ultimate rapes. While a statement of the exact distance appellant dragged and carried the victim is not in the record, from the circumstances it was substantial. In addition, the asportation subjected Ms. Carson to a substantial increase *Page 14 
in the risk of harm separate from the rapes. As evidence of this, while appellant was carrying Ms. Carson, he threw her into a truck several times, causing her to sustain physical injury. Further, while she was resisting appellant, he choked her with his bare hands. Thus, based on the record before us, the offense of attempted kidnapping was not merely incidental to the rapes, but rather was committed separately or with a separate animus.
 {¶ 43} Appellant's first assignment of error is not well taken.
 {¶ 44} For his second assignment of error, appellant states:
 {¶ 45} "THE TRIAL COURT VIOLATED THE APPELLANT'S RIGHTS TO EQUAL PROTECTION AND DUE PROCESS OF LAW UNDER THE FIFTH ANDFOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND UNDER SECTIONS 2, 10 AND 16 OF THE OHIO CONSTITUTION WHEN IT SENTENCED HIM CONTRARY TO R.C. 2929.11(B).
 {¶ 46} Under his second assignment of error, appellant argues the trial court failed to consider whether his sentence was consistent with sentences imposed for similar crimes committed by similar offenders, in violation of R.C. 2929.11(B).
 {¶ 47} R.C. 2929.11(B), which provides that a felony sentence must be consistent with sentences imposed for similarly situated offenders, requires consistency when applying Ohio's sentencing guidelines. However, this court has repeatedly held that sentencing consistency is not derived from the trial court's comparison of the current case to prior sentences for similar offenders and similar offenses. State v.Spellman, 160 Ohio App.3d 718, 722, 2005-Ohio-2065. Rather, it is the trial court's proper application of the statutory sentencing guidelines that ensures consistency. State *Page 15 v. Swiderski, 11th Dist. No. 2004-L-112, 2005-Ohio-6705, at ¶ 58. Thus, in order to show a sentence is inconsistent, a defendant must show the trial court failed to properly consider the statutory factors and guidelines.
 {¶ 48} Based on the precedent established by this court, appellant's position that consistency in a sentence is determined by a numerical comparison to other sentences for similar crimes lacks merit. Simply because appellant's sentence was not identical to sentences in other cases does not imply that his sentence was inconsistent with sentences of other similarly situated offenders.
 {¶ 49} The trial court stated on the record that it considered the purposes of felony sentencing under R.C. 2929.11, which include the requirement that sentences imposed be consistent. The court also considered the seriousness and recidivism factors of R.C. 2929.12. The court considered several pertinent factors in this case that made appellant's conduct more serious than conduct normally constituting the offense. For example, the court noted that the victim had suffered serious psychological and physical harm and that appellant's attack was a life-altering experience for her. Under the recidivism factors, the court considered appellant's prior juvenile adjudication for theft and his criminal convictions for assault and drug abuse as well as his conviction for 14 separate traffic offenses, the latter of which, according to the court, indicated a lack of respect for the law. The court also noted that appellant has abused alcohol and marijuana daily and used them on the date he raped the victim. Also, the court noted appellant has been given treatment opportunities through the legal system at the Lake/Geauga Center on Alcoholism and Drug Abuse in 2002, but squandered this opportunity. The court noted appellant's friends had warned him that he engages in *Page 16 
sexual misconduct when drunk or high on drugs, but that he paid no attention to these warnings.
 {¶ 50} The court concluded that, after weighing these factors, a term of imprisonment was consistent with the purposes and principles of sentencing, and that appellant was not amenable to any available community control sanction.
 {¶ 51} Appellant's sentence of eight years on each count of rape and four years on attempted kidnapping is within the statutory range of penalties for the offenses to which he pled guilty. Moreover, the trial court properly applied and considered the statutory sentencing guidelines and factors before imposing appellant's sentence. The court's sentencing thus met the consistency requirement of R.C. 2929.11(B).
 {¶ 52} While we do not believe that a numerical comparison to other sentences is dispositive of the issue of consistency, we note that the two cases cited by appellant to the trial court in support of his argument actually support our holding that appellant's sentence was consistent. In State v. Williams, 11th Dist. Nos. 2007-L-131 and 2007-L-137, 2008-Ohio-2122, the defendant was sentenced to ten years for one count of rape and five years for tampering with evidence. The defendant in that case was only convicted of one count of rape and so actually received a more severe sentence, i.e., the 10-year maximum sentence, for rape, than appellant, who received eight years for each of his rape convictions. In the second case cited by appellant, State v.Schaub, 11th Dist. No. 2006-L-126, 2007-Ohio-2853, the defendant received an eight year sentence on his conviction of one count of rape. Appellant cannot reasonably equate that case with the case sub judice because here, unlike in Schaub, appellant pled guilty to two separate rape offenses. *Page 17 
 {¶ 53} Appellant's second assignment of error is not well taken.
 {¶ 54} For his third assignment of error, appellant asserts:
 {¶ 55} "THE TRIAL COURT ERRED BY SENTENCING THE DEFENDANT-APPELLANT TO AN EXCESSIVE TERM OF IMPRISONMENT."
 {¶ 56} Under his third assigned error, appellant concedes the trial court considered the seriousness and recidivism factors set forth at R.C. 2929.12, but argues the court did not give certain circumstances relevant to those factors "appropriate consideration." Specifically, appellant argues the court should have given more weight to appellant's remorse and less weight to his criminal history.
 {¶ 57} First, we note that appellant failed to raise this issue at his sentencing hearing. He therefore waived this issue on appeal.Payne, supra. Therefore, this assigned error is not well taken. However, even if appellant had preserved the issue for appeal, it would not have been well taken.
 {¶ 58} The trial court indicated on the record and in its sentencing entry that it had considered the purposes and principles of felony sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12. While appellant may not agree with the emphasis placed by the trial court on certain circumstances of this case, a trial court is not required to give any particular weight or emphasis to a given fact or circumstance; it is merely required to consider the statutory guidelines and factors in exercising its discretion.
 {¶ 59} Because the trial court sentenced appellant within the statutory range and considered the statutory purposes and guidelines of felony sentencing and the *Page 18 
seriousness and recidivism factors, we hold the trial court did not abuse its discretion in sentencing appellant.
 {¶ 60} Further, we do not agree with appellant's suggestion that the trial court was required to make findings under R.C. 2929.12 that were supported by the record. First, we note the trial court, in followingFoster's mandate, did not make "findings," as appellant argues; rather, it merely considered the seriousness and recidivism factors of R.C. 2929.12 in sentencing appellant. Moreover, in Foster, the Court held that trial courts are not required to make findings under R.C. 2929.11
and 2929.12; they are merely required to "consider" the principles and factors set forth in those two statutes. Foster, supra, at 12-14.
 {¶ 61} Appellant's third assignment of error is not well taken.
 {¶ 62} Appellant contends for his fourth assignment of error:
 {¶ 63} "APPLICATION OF SB. 10 TO CLASSIFY APPELLANT AS A TIER III OFFENDER VIOLATES THE EX POST FACT CLAUSE OF THE UNITED STATES CONSTITUTION AND THE RETROACTIVE LAWS CLAUSE OF THE OHIO CONSTITUTION, THE SEPARATION OF POWERS DOCTRINE OF THE FEDERAL AND STATE CONSTITUTIONS AND THE APPELLANT'S RIGHTS TO SUBSTANTIVE AND PROCEDURAL DUE PROCESS AS GUARANTEED BY THE FEDERAL AND STATE CONSTITUTIONS."
 {¶ 64} During appellant's sentencing, the trial court advised him of his duty as a Tier III sex offender to register with the appropriate law enforcement officials and his other duties under Am. Sub. Senate Bill 10 ("S.B. 10"), Ohio's version of the Federal Sex Offender Registration and Notification Act ("SORNA"). S.B. 10 was enacted in July, *Page 19 
2007; made effective on January 1, 2008; and incorporated into Ohio law at R.C. Chapter 2950. By the express terms of the statute, its registration and notification provisions are retroactive. R.C. 2950.033.
 {¶ 65} As a preliminary matter, we note that appellant failed to challenge S.B. 10 below on the grounds that it violated the ex post facto clause of the Federal Constitution or the prohibition against retroactive laws in Section 28, Article II of the Ohio Constitution. As a result, these arguments are waived on appeal. Payne, supra. However, even if they were not waived, for the reasons discussed infra, they would lack merit.
 {¶ 66} S.B. 10 classifies convicted sex offenders under one of three "tiers" based solely on the seriousness of their offenses, and requires them to register with the sheriff of the county in which they reside, are being educated, and are employed. They are also required to give notice of any change of address. The frequency and duration of reporting required of such offenders depends on his or her classification. Tier III sex offenders, such as appellant, are required to verify their address every ninety days for life. R.C. 2950.06. SORNA requires all jurisdictions to maintain a registry that contains the following information regarding sex offenders: their names and aliases, social security number, residence, place of employment or school, vehicle information, physical description, criminal history, current photograph, fingerprints, palm prints, a DNA sample, and a photocopy of his or her driver's license or identification card. The offender's information is placed into an internet registry. R.C. 2950.081. The sex offender is prohibited from residing within 1,000 feet from any school, preschool, or child day-care center. R.C. 2950.034. The sheriff with whom each such offender registers is *Page 20 
required to notify neighbors who live within 1,000 feet of the offender's home, work, and school, as well as the public school superintendent and children's service agency and any child day-care center in that geographical area. R.C. 2950.11.
 {¶ 67} Before addressing appellant's arguments, we first note that statutes enjoy a strong presumption of constitutionality. "An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." State ex rel. Dickman v. Defenbacher (1955),164 Ohio St. 142, paragraph one of the syllabus. "A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality." Id. at 147. "That presumption of validity of such legislative enactment cannot be overcome unless it appear[s] that there is a clear conflict between the legislation in question and some particular provision or provisions of the constitution." Xenia v. Schmidt (1920), 101 Ohio St. 437, paragraph two of the syllabus; State ex rel. Durbin v. Smith (1921)102 Ohio St. 591, 600-601; Dickman, supra, at 147. Accordingly, we begin our analysis with the strong presumption that R.C. Chapter 2950 is constitutional.
 {¶ 68} Section 10, Article I of the United States Constitution provides: "No State shall * * * pass any * * * ex post facto Law." InBeazell v. Ohio (1925), 269 U.S. 167, the United States Supreme Court held: "any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, * * * is prohibited asex post facto."(Emphasis sic.) Id. at 169-170. *Page 21 
 {¶ 69} The ex post facto clause applies only to criminal statutes.State v. Ferguson, ___ Ohio St.3d ___, 2008-Ohio-4824, at ¶ 43. Courts use the "intent-effects" test to distinguish between civil and criminal statutes to determine whether a sex offender registration statute is an ex post facto law. Kansas v. Hendricks (1997), 521 U.S. 346, 361-369. The United States Supreme Court in Smith v. Doe (2003), 538 U.S. 84, set forth the following test to determine whether a statute violates the ex post facto clause:
 {¶ 70} "* * * We must `ascertain whether the legislature meant the statute to establish "civil" proceedings.' Kansas[, supra, at 361]. If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is `"so punitive either in purpose or effect as to negate [the State's] intention" to deem it "civil."' Ibid. (quotingUnited States v. Ward, 448 U.S. 242, 248-249 (1980)). Because we `ordinarily defer to the legislature's stated intent,'Hendricks, supra, at 361, `"only the clearest proof" will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty,' Hudson v. United States,522 U.S. 93, 100 (1997) (quoting Ward, supra, at 249); see alsoHendricks, supra, at 361; United States v. Ursery, 518 U.S. 267, 290
(1996); United States v. One Assortment of 89 Firearms, 465 U.S. 354,365 (1984)." Doe, supra, at 92.
 {¶ 71} Defendant argues that the General Assembly intended S.B. 10 to be punitive in nature, but that even if the new law was intended to be remedial, it has a punitive effect that negates its declared remedial intention. He argues its retroactive application therefore constitutes an ex post facto law. We do not agree. *Page 22 
 {¶ 72} In State v. Cook, 83 Ohio St.3d 404, 1998-Ohio-291, the Supreme Court of Ohio held the registration and notification requirements in former R.C. Chapter 2950 were not punitive in intent or effect. The Court therefore held the statute did not violate the ex post facto clause. Id. at 414-423. Thereafter, in State v. Williams,88 Ohio St.3d 513, 2000-Ohio-428, the Court noted the remedial nature of former R.C. Chapter 2950, and held it was "neither `criminal,' nor a statute that inflicts punishment." Id. at 528. More recently, in State v.Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, the Court held that "sex-offender-classification proceedings under R.C. Chapter 2950 are civil in nature[.]" Id. at 389.
 {¶ 73} Under the first prong of the intent-effects test, we must determine whether the General Assembly's intent in promulgating R.C. Chapter 2950 was penal or remedial. A court must look to the language and purpose of the statute in order to determine legislative intent.State v. S.R. (1992), 63 Ohio St.3d 590, 594-595. R.C. 2950.02(A) provides:
 {¶ 74} "(A) The general assembly hereby determines and declares that it recognizes and finds all of the following:
 {¶ 75} "* * *
 {¶ 76} "(2) Sex offenders * * * pose a high risk of engaging in further sexually abusive behavior even after being released from imprisonment, * * * and protection of members of the public from sex offenders * * * is a paramount governmental interest.
 {¶ 77} "* * * *Page 23 
 {¶ 78} "(6) The release of information about sex offenders * * * to public agencies and the general public will further the governmental interests of public safety * * * as long as the information released is rationally related to the furtherance of [that goal].
 {¶ 79} "(B) The general assembly hereby declares that, in providing in this chapter for registration regarding offenders * * * who have committed sexually oriented offenses * * * and for community notification regarding tier III sex offenders * * * who are about to be or have been released from imprisonment * * * and who will live in or near a particular neighborhood or who otherwise will live in or near a particular neighborhood, it is the general assembly's intent to protect the safety and general welfare of the people of this state. The general assembly further declares that it is the policy of this state to require the exchange * * * of relevant information about sex offenders * * * among public agencies and officials and to authorize the release in accordance with this chapter of necessary and relevant information about sex offenders * * * to members of the general public as a means of assuring public protection and that the exchange or release of that information is not punitive."
 {¶ 80} Thus, R.C. Chapter 2950, on its face, clearly is not punitive because: (1) it seeks to "protect the safety and general welfare of the people of this state," which is a "paramount governmental interest," R.C. 2950.02 (A)(2), and (2) it expressly states the exchange of information provided for therein is "not punitive." R.C. 2950.02(B). Further, S.B. 10 grants to sex offenders the right to a hearing to contest their reclassification as a tier I, II, or III offender by the attorney general, and provides the hearing shall be governed by the Ohio Rules of Civil Procedure. Finally, SORNA is *Page 24 
codified in Title 42 of the United States Code, a section reserved for "Public Health and Welfare," rather than for criminal punishment.
 {¶ 81} Appellant argues that a punitive intent can be gleaned from the absence of any individualized risk assessment under S.B. 10. As noted above, the new legislation automatically places offenders into one of three tiers based solely on the offense of which they were convicted, and imposes corresponding registration requirements on them. InSmith, supra, the United States Supreme Court held that a legislature may take such a categorical approach without transforming a regulatory scheme into a punitive one. The Court held: "The State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment[.]" Id. at 104.
 {¶ 82} After considering the legislation as a whole, we are persuaded that the General Assembly through S.B. 10 intended to enact a civil, regulatory scheme.
 {¶ 83} Under the second prong of the intent-effects test, only the clearest proof will be adequate to show that a statute has a punitive effect so as to negate a declared remedial intention. Cook, supra, at 418; Flemming v. Nestor (1960), 363 U.S. 603, 617. Appellant addresses the following factors which the Supreme Court has held may be used in determining whether a sex offender registration statute has a punitive effect: (1) whether it imposes an affirmative disability or restraint; (2) whether it is analogous to a historical form of punishment; (3) whether it is rationally related to a non-punitive purpose; and (4) whether it is excessive.
 {¶ 84} Appellant first argues that S.B. 10 imposes restraints or disabilities. In Cook, the Ohio Supreme Court held that registration and notification impose no new *Page 25 
affirmative disability or restraint on a sex offender. Id. at 418. The Court held that, while registration may cause some inconvenience, it is comparable to renewing a driver's license and is merely a "de minimus administrative requirement." Id.
 {¶ 85} Appellant next argues that S.B. 10 is similar to colonial shaming punishments. The Supreme Court rejected this argument inCook in holding that registration has long been regarded as a valid regulatory technique with a remedial purpose, and that public dissemination of accurate information about a convicted criminal has not traditionally been regarded as punishment when required in furtherance of a legitimate governmental purpose, such as public protection. Id. at 418-419.
 {¶ 86} Under the third factor, appellant argues that S.B. 10 is not rationally related to a non-punitive purpose and is therefore punitive in effect. He argues the new legislation is irrational because it does not take into account the likelihood of a particular defendant to reoffend, but rather classifies offenders based solely on the offense committed. However, we do not agree the new legislation is irrational. S.B. 10 serves the non-punitive purpose of protecting the public from released sex offenders. The new legislation is rationally related to this purpose because it alerts the public to the potential presence of sex offenders. Smith, supra, at 102-103. Further, the fact that the legislature chose to categorize offenders based on the crime committed does not make S.B. 10 irrational. Id.
 {¶ 87} Finally, appellant argues that, even if S.B. 10 has a non-punitive purpose, requiring Tier III offenders to verify their address every 90 days for life and placing an offender's personal information on an internet registry is excessive. As the Supreme Court in Cook held, the lifetime address verification requirement for sexual predators is *Page 26 
not excessive, "but is justified to enhance law enforcement's ability to monitor the whereabouts of the most dangerous classification of sexual offender." Id. at 421. The United States Supreme Court in Smith held that internet notification was a passive system and that such notification was reasonable in light of the mobility of the population and the need for ready access. Id. at 105.
 {¶ 88} We therefore reject appellant's argument that S.B. 10 is so punitive in effect that it negates the General Assembly's declared non-punitive intent.
 {¶ 89} We note that the Second, Third, Fourth, Eighth, and Ninth Appellate Districts have held that S.B. 10 is civil in nature and not punitive in intent or effect and therefore not an ex post facto law. SeeState v. Desbiens, 2d Dist. No. 22489, 2008-Ohio-3375; In re Smith, 3d Dist. No. 1-07-58, 2008-Ohio-3234; State v. Longpre, 4th Dist. No. 08CA3017, 2008-Ohio-3832; State v. Holloman-Cross, 8th Dist. No. 90351,2008-Ohio-2189; In re G.E.S., 9th Dist. No. 24079, 2008-Ohio-4076. Federal courts that have addressed the issue have reached the same result. See United States v. Markel (W.D.Ark. 2007), 2007 U.S. Dist. LEXIS 27102; see, also, United States v. Templeton (W.D.Okla. 2007), 2007 U.S. Dist. LEXIS 8930.
 {¶ 90} Next, appellant argues that S.B. 10 also violates the prohibition against retroactive laws in Section 28, Article II of the Ohio Constitution. This section provides that "the general assembly shall have no power to pass retroactive laws."
 {¶ 91} "The analysis of claims of unconstitutional retroactivity is guided by a binary test. We first determine whether the General Assembly expressly made the statute retrospective. State v. Consilio,114 Ohio St.3d 295, 2007-Ohio-4163, ¶ 10. If we find that the legislature intended the statute to be applied retroactively, we proceed *Page 27 
with the second inquiry: whether the statute restricts a substantive right or is remedial. Id. If a statute affects a substantive right, then it offends the constitution. Van Fossen [v. Babcock Wilcox Co.
(1988)], 36 Ohio St.3d [100,] at 106." Ferguson, supra, at ¶ 13.
 {¶ 92} While the registration and notification requirements of S.B. 10 are expressly made retroactive, see R.C. 2950.04, the Supreme Court inCook held such requirements do not affect a substantial right. In holding that the registration and address verification provisions of R.C. Chapter 2950 are de minimis procedural requirements that are necessary to achieve the goals of R.C. Chapter 2950, the Ohio Supreme Court in Cook, supra, commented:
 {¶ 93} "`[I]f the law did not apply to previously-convicted offenders, notification would provide practically no protection now, and relatively little in the near future. The Legislature reached the irresistible conclusion that if community safety was its objective, there was no justification for applying these laws only to those who offend or who are convicted in the future, and not applying them to previously-convicted offenders. Had the Legislature chosen to exempt previously-convicted offenders, the notification provision of the law would have provided absolutely no protection whatsoever on the day it became law, for it would have applied to no one. The Legislature concluded that there was no justification for protecting only children of the future from the risk of reoffense by future offenders, and not today's children from the risk of reoffense by previously-convicted offenders, when the nature of those risks were identical * * *.'"Cook, supra, at 412-413, citing Doe v. Poritz (1995) 142 N.J. 1, 13-14,662 A.2d 367, 373. *Page 28 
 {¶ 94} The Court in Cook found the registration and address verification provisions of former R.C. Chapter 2950 were remedial and thus did not violate the ban on retroactive laws set forth in the Ohio Constitution. Id. at 413.
 {¶ 95} We therefore hold that the registration and notification requirements of S.B. 10 are remedial and procedural in nature and not substantive, and that S.B. 10 is not a retroactive law prohibited by the Ohio Constitution.
 {¶ 96} To the extent appellant is arguing S.B. 10's 1,000 feet residency restriction violates the retroactivity clause of the Ohio Constitution, we note the Ohio Supreme Court has recently addressed the issue. An amendment to the former sex offender law, like S.B. 10, prohibited sex offenders from residing within 1,000 feet of a school. The Supreme Court held this prohibition may not be applied retroactively. The Court held: "[b]ecause R.C. 2950.031 was not expressly made retrospective, it does not apply to an offender who bought his home and committed his offense before the effective date of the statute." Hyle v. Porter, 117 Ohio St.3d 165, syllabus,2008-Ohio-542. Likewise, S.B. 10's residency restriction does not expressly provide it is retroactive. R.C. 2950.034.
 {¶ 97} We also note that the Supreme Court has recently considered three other amendments to the former sex offender law, which survive in nearly identical form in S.B. 10. In Ferguson, supra, the Supreme Court held the following amendments to the former law do not violate the ex post facto clause of the United States Constitution or the retroactivity clause of the Ohio Constitution: (1) the provision that the former sexual predator classification and duty to verify the offender's address remain for life; (2) the provision that offenders are required to register with the sheriff where they work and go *Page 29 
to school, in addition to where they reside; and (3) the provision that any information required to be provided in the registration process be included on an internet database.
 {¶ 98} Next, appellant argues that S.B. 10 violates the separation of powers doctrine. While the Ohio Constitution does not include an express provision establishing the doctrine of separation of powers, the Ohio Supreme Court explained the principle as follows: "[t]he essential principle underlying the policy of the division of powers of government into three departments is that powers properly belonging to one of the departments ought not to be * * * administered by either of the other departments." State ex rel. Bryant v. Akron Metro. Park Dist. (1929),120 Ohio St. 464, 473.
 {¶ 99} Appellant argues that in enacting a system of registration and notification based solely on the offense committed by the sex offender, S.B. 10 divested Ohio courts of the power to sentence a defendant. The inherent flaw in this argument is that, as held supra, the registration and notification scheme of the new legislation is not punitive in nature, but rather civil and remedial. Further, while the legislature enacts laws, it is the role of the judiciary to hear and determine a controversy between adverse parties, ascertain the facts, and apply the law to the facts to render a final judgment. Fairview v. Giffee (1905), 73 Ohio St.183, 190. The enactment of laws establishing registration requirements for, e.g., motorists, corporations, or sex offenders, is traditionally the province of the legislature and such laws do not require judicial involvement.
 {¶ 100} We therefore hold that S.B. 10 does not violate the separation of powers doctrine. *Page 30 
 {¶ 101} Next, appellant argues that S.B. 10 violates his procedural due process rights because he has no opportunity to challenge his classification or to protect his "vested interest" in not having to register or be subject to community notification. Procedural due process requires notice and an opportunity to be heard where the state seeks to infringe a protected liberty or property interest. Williams v.Dollison (1980), 62 Ohio St.2d 297, 299.
 {¶ 102} In State v. Hayden, 96 Ohio St.3d 211, 2002-Ohio-4169, the Ohio Supreme Court held:
 {¶ 103} "* * * Ohio's [former sex offender] statutory scheme requires a hearing to determine sexual-offender status only for certain sex offenders. See R.C. 2950.11(B), which provides that for those convicted of a sexually oriented offense, the trial court `shall' hold a hearing to determine whether the offender is a sexual predator only if certain criteria apply. Appellee does not meet these criteria because he was sentenced before January 1, 1997, and his offense was not violent. R.C. 2950.11(B)(1) and (2). Therefore, he is not statutorily entitled to a classification hearing.
 {¶ 104} "The question now becomes, is appellee constitutionally entitled to such a hearing? Again, the answer is no. Neither the Due Process Clause of the Fourteenth Amendment to the United States Constitution nor the analogous clause in Ohio's Constitution, Section 16, Article I, requires a hearing in this case.
 {¶ 105} "Appellee has not shown that he was deprived of a protected liberty or property interest as a result of the registration requirement imposed without a hearing. A constitutionally protected liberty interest has been defined as freedom from bodily restraint and punishment.Ingraham v. Wright (1977), 430 U.S. 651, 673-674, * * * citing *Page 31 Rochin v. California (1952), 342 U.S. 165 * * *. Appellee has certainly not suffered any bodily restraint as a result of the registration requirement imposed on him as a sex offender. Nor has he been punished. In State v. Eppinger (2001), 91 Ohio St.3d 158, 165, * * * we stated that `R.C. Chapter 2950 is not meant to punish a defendant, but instead, "to protect the safety and general welfare of the people of this state."' Id., quoting R.C. 2950.02(B). See, also, State v. Williams (2000),88 Ohio St.3d 513, 527, * * *. (The registration provisions of R.C. Chapter 2950 are neither criminal nor punitive in nature.)
 {¶ 106} "In fact, affording appellee a hearing under these facts would be nothing more than an empty exercise. The point of such a hearing would be to determine whether appellee committed a sexually oriented offense. What evidence could appellee possibly present that would justify a finding that he [did] not? The fact of his conviction of attempted rape is established. When he was convicted of that crime, which is a sexually oriented offense under R.C. 2950.01(D)(1)(g), appellee was automatically classified as a sexually oriented offender and therefore must register with the sheriff of the county in which he resides as prescribed by R.C. 2950.04(A)(2). In * * * Cook[, supra, at] 412, we held that `the registration and address verification provisions of R.C. Chapter 2950 are de minimis procedural requirements that are necessary to achieve the goals of R.C. Chapter 2950.'" (Emphasis sic.)Hayden at 214-215.
 {¶ 107} Likewise, here, appellant has not shown that he has been deprived of any liberty or property right by S.B. 10. Based on the foregoing precedent, we hold that S.B. 10 does not violate appellant's procedural due process rights. *Page 32 
 {¶ 108} Finally, appellant argues that R.C. 2950.034, which restricts sex offenders from residing in areas that are within 1,000 feet of any school, preschool, or child day-care facility, violates his substantive due process rights because it interferes with a liberty interest tantamount to being on parole or his right of privacy.
 {¶ 109} First, we note appellant failed to challenge the residency restrictions of S.B. 10 in the trial court, and this argument is therefore waived on appeal.
 {¶ 110} In any event, courts routinely decline such challenges unless evidence is presented that the defendant was actually injured by the residency restriction on the ground of waiver. State v. Bruce, 8th Dist. No. 89641, 2008-Ohio-926, at ¶ 10-11. Appellant has failed to show or even argue that he owns property or resides within 1,000 feet of any of the above-listed facilities or that he was forced to move outside this limit. As a result, appellant's argument that S.B. 10 has interfered with his liberty or privacy interest fails because he has not shown that he has been actually injured by S.B. 10.
 {¶ 111} Moreover, a defendant lacks standing to challenge the constitutionality of a residency restriction unless the record shows the defendant suffered an actual deprivation of his property rights as a result of the application of such restriction to him. State v.Pierce, 8th Dist. No. 88470, 2007-Ohio-3665, at ¶ 33. Because appellant has failed to show an actual deprivation of his property rights, he does not have standing to challenge the residency restriction of S.B 10.
 {¶ 112} Appellant's fourth assignment of error is not well taken. *Page 33 
 {¶ 113} For the reasons stated in the Opinion of this court, the assignments of error are without merit, and it is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.
 DIANE V. GRENDELL, P.J., MARY JANE TRAPP, J., concur. *Page 1