JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Andre Pierce, appeals from the judgment of the Cuyahoga County Court of Common Pleas that found him to be a sexual predator. For the reasons stated herein, we affirm.
 {¶ 2} On February 13, 1996, Pierce was charged with rape, robbery, and kidnapping. Pierce pled guilty to the rape charge and was convicted thereof. The remaining charges were nolled by the trial court. The trial court sentenced Pierce to a prison term of five to twenty-five years.
 {¶ 3} Pierce was released on parole on May 9, 2006. Approximately one month before Pierce's release, the state requested the scheduling of a H.B. 180 sexual predator adjudication hearing. The trial court referred Pierce to the court psychiatric clinic for an evaluation pursuant to R.C. 2950.01, and a report was issued on June 12, 2006.
 {¶ 4} On June 20, 2006, the trial court conducted a H.B. 180 hearing. At the hearing, the state introduced several exhibits, including the psychiatric clinic's report, journal entries reflecting Pierce's prior convictions, and Pierce's institutional record.
 {¶ 5} The evidence reflected that Pierce, a 37-year-old male, had been convicted of rape in 1996 for an incident involving a longtime adult female friend. Pierce claimed that at the time of the incident, he was on a three-day cocaine binge. He expressed remorse for his actions. The collateral version of the offense *Page 4 
contained in the psychiatric clinic's report detailed the nature of the offense and Pierce's conduct.
 {¶ 6} The psychiatric clinic's report reflects that Pierce had committed various offenses as a juvenile, as well as several other offenses as an adult. At the hearing, Pierce conceded he was convicted of several offenses that were not sexually related, including two drug offenses and a burglary offense. Further, Pierce had two placements in disciplinary segregation while incarcerated: one for possession of a "door jam" and one for possession of a $100 bill.
 {¶ 7} During his incarceration for the rape offense, Pierce obtained his GED, took several college classes, and earned certificates in business management, hospital administration, and vocational drafting. He also served as a literacy volunteer tutor and participated in community service and service learning workshops. He consistently received above-average work performance scores on evaluations for his work during his incarceration. Also while incarcerated, Pierce attended a 20-hour substance abuse education program, attended 12-step program meetings, and completed a sexual offender treatment program. Since his release from prison, Pierce attended at least three AA meetings per week because of a parole mandate. Pierce stated that he was tested for illegal drugs as a condition of his parole and he had tested negative. He later clarified that he had been tested on only one occasion since his release from prison. He also stated his intent to never use drugs again. In the psychiatric clinic's report, the social worker who performed *Page 5 
the evaluation found that Pierce's alcohol abuse and cocaine dependence were in full remission.
 {¶ 8} The psychiatric clinic's report also indicated that Pierce had six children from five separate relationships. However, he had never been married and never cohabited with a female. The report reflected that Pierce had received a Static-99 score of 4, which placed him in the "moderate-high" risk category for sexual recidivism.
 {¶ 9} After considering the testimony and evidence presented at the hearing, as well as the arguments of counsel, and after considering the relevant factors under R.C. 2950.09(B)(3), the trial court found by clear and convincing evidence that Pierce was likely to re-offend and labeled him a sexual predator. In making this determination, the trial court found the following: "[C]lear and convincing evidence indicates defendant is likely to re-offend due to the offender's age, prior criminal record, defendant's mental illness i.e. drug addiction, the nature of sexual conduct with the victim. Additional behavioral characteristics that contribute to the defendant's conduct also were considered. Specifically, his conduct during the prior burglary, the Static-99 evaluation of moderate-high risk category including four or more prior sentencing dates, prior non-sexual violence, unrelated victim and not living with a lover for at least two years."
 {¶ 10} Pierce filed this appeal, raising three assignments of error for our review. His first assignment of error provides as follows: *Page 6 
 {¶ 11} "I: The state failed to prove by clear and convincing evidence that appellant is likely to engage in the future in one or more sexually oriented offenses.'"
 {¶ 12} A sexual predator is "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C.2950.01(E). During a sexual predator hearing, the court "shall determine by clear and convincing evidence whether the offender is a sexual predator." R.C. 2950.09(B)(3). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." State v. Eppinger, 91 Ohio St.3d 158, 164, 2001-Ohio-247, quoting Cross v. Ledford (1954), 161 Ohio St. 469, 477.
 {¶ 13} In making a sexual predator determination, a trial court should consider all relevant factors, which include, but are not limited to, the following: the offender's age, the offender's prior criminal record, the age of the victim, whether the sexually oriented offense for which sentence was imposed involved multiple victims, whether the offender used drugs or alcohol to impair the victim or to prevent the victim from resisting, whether the offender has participated in available programs for sexual offenders, any mental illness or mental disability of the offender, the nature of the *Page 7 
offender's conduct and whether that conduct was part of a demonstrated pattern of abuse, whether the offender displayed cruelty during the commission of the crime, and any additional behavioral characteristics that contributed to the offender's conduct. R.C. 2950.09(B)(3);State v. Shields, Cuyahoga App. No. 85998, 2006-Ohio-1536.
 {¶ 14} A trial court should discuss, on the record, the evidence and factors of R.C. 2950.09(B)(3) upon which it relied in making its determination. Eppinger, 91 Ohio St.3d at 166. However, a trial court is not required to find a specific number of factors under R.C.2950.09(B)(3) before it can adjudicate an offender a sexual predator, so long as its determination is grounded upon clear and convincing evidence. State v. Purser, 153 Ohio App.3d 144, 149, 2003-Ohio-3523. Moreover, R.C. 2950.09(B) does not require that each factor be met; it simply requires the trial court to consider those factors that are relevant. State v. Grimes (2001), 143 Ohio App.3d 86, 89,757 N.E.2d 413.
 {¶ 15} In reviewing a sexual predator classification, this court's role is to determine whether the weight of the evidence supports the trial court's decision. "[A] trial court's determination in a sex-offender-classification hearing must be viewed under the civil manifest-weight-of-the-evidence standard and may not be disturbed when the judge's findings are supported by some competent, credible evidence." State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, syllabus; see, also, State v. Forbes, Cuyahoga App. No. 87473,2006-Ohio-5612, State v. Hills, *Page 8 
Cuyahoga App. No. 78546, 2002-Ohio-497; State v. Cook,83 Ohio St.3d 404, 426, 1998-Ohio-291.
 {¶ 16} Pierce argues that the record in this case does not support a sexual predator classification. He states that he committed a single sex offense against an adult friend, and he points to several factors that weigh in his favor. Sepecifically, he has no prior convictions for sex-related offenses; the victim was 24 years old at the time of the incident and only three years younger than Pierce; the offense did not involve multiple victims; he did not use drugs or alcohol to impair the victim; he successfully completed a sex offender treatment program and a victim awareness program during his incarceration; he has no history of mental illness. He also states that his prior convictions were related to his drug problem, which is now in full remission. Finally, Pierce states that the Static-99 score overstates his risk of re-offending sexually.[1] *Page 9 
 {¶ 17} Although there are several factors that favor Pierce in this case, we nonetheless cannot ignore the other factors that are present and upon which the trial court relied in reaching its determination. As we stated in State v. Butler, Cuyahoga App. No. 86554, 2006-Ohio-4492, "[t]he trial court may place as much or as little weight on any of the factors as it chooses; the test is not a balancing one. Nor does the trial court have to find the majority of the factors to be applicable to the defendant in order to conclude the defendant is a sexual predator."
 {¶ 18} In reviewing the record of the instant matter, it is clear that the trial court adhered to the statutory requirements and considered the relevant factors enumerated in R.C. 2950.09(B)(3). The court considered the evidence and testimony presented as well as the arguments of counsel. The trial court found relevant to its determination the nature of the rape offense, which involved someone known, but unrelated, to Pierce, Pierce's history of drug abuse, and Pierce's prior criminal record, which included a prior offense of violence. The court also considered Pierce's age and his Static-99 evaluation of moderate-high risk category. Finally, the court noted that Pierce had not lived with a lover for at least two years.
 {¶ 19} In this case, the record demonstrates that the trial court was presented with clear and convincing evidence to support its ultimate adjudication that Pierce is a sexual predator as contemplated by R.C.2950.01(E). Further, our review reflects that the trial court's decision was supported by the weight of the evidence. *Page 10 
 {¶ 20} Although we uphold the trial court's determination in this case, we note the inherent problems associated with the current sexual predator classification process. This process has lead to the inconsistent application of the predator label. Similarly situated offenders are often labeled differently depending on the individual perspective of the judge. This is because the trial court may place as much or as little weight on any of the factors as it chooses, and the trial court does not have to find a majority of the factors to be applicable to the defendant in order to conclude the defendant is a sexual predator. This leads to inconsistencies, as well as perpetuating the problem of overclassification and/or underclassification of offenders.
 {¶ 21} In State v. Thompson (1999), 140 Ohio App.3d 638, this court noted its concern regarding overclassification of sexual predators, which could dilute both the purpose behind the law and the credibility of the law. This court stated that "society and its limited law enforcement resources risk being flooded with a number of persons who may or may not deserve to be classified as high-risk individuals * * * This result could be tragic for many."
 {¶ 22} In State v. Eppinger, 91 Ohio St.3d 158, 2001-Ohio-247, the Supreme Court acknowledged and reiterated the danger of overclassification raised in Thompson. In addition, it went on to adopt the model for predator hearings outlined in Thompson that deserves repeating here: *Page 11 
 "In a model sexual offender classification hearing, there are essentially three objectives. First, it is critical that a record be created for review. Therefore, the prosecutor and defense counsel should identify on the record those portions of the trial transcript, victim impact statements, presentence report, and other pertinent aspects of the defendant's criminal and social history that both relate to the factors set forth in R.C. 2950.09(B)(2) and are probative of the issue of whether the offender is likely to engage in the future in one or more sexually oriented offenses. If the conviction is old, as in this case, the state may need to introduce a portion of the actual trial record; if the case was recently tried, the same trial court may not need to actually review the record. In either case, a clear and accurate record of what evidence or testimony was considered should be preserved, including any exhibits, for purposes of any potential appeal.
 "Second, an expert may be required, as discussed above, to assist the trial court in determining whether the offender is likely to engage in the future in one or more sexually oriented offenses. Therefore, either side should be allowed to present expert opinion by testimony or written report to assist the trial court in its determination, especially when there is little information available beyond the conviction itself. While providing an expert at state expense is within the discretion of the trial court, the lack of other criteria to assist in predicting the future behavior of the offender weighs heavily in favor of granting such a request.
 "Finally, the trial court should consider the statutory factors listed in R.C. 2950.09(B)(2), and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism."
 {¶ 23} Unfortunately, even rigid adherence to this model will not end the problem of inconsistent sexual predator labeling. Only the adoption of clearly defined classes of offenders, such as "child predators" or "serial rapists," coupled with standards based on specific conduct or prior conviction(s), will diminish the dangers of inconsistent labeling. *Page 12 
 {¶ 24} Nevertheless, in this case, our review reflects that the trial court's decision was supported by the weight of the evidence. As a result, Pierce's first assignment of error is overruled.
 {¶ 25} Pierce's second assignment of error provides the following:
 {¶ 26} "II. R.C. 2950.01 et seq., as amended by Senate Bill 5 and as applied to appellant, violates the prohibition on ex post facto and retroactive legislation as established by Article I, Section 10 of the United States Constitution and Article II, Section 28 of the Ohio Constitution."
 {¶ 27} This court has previously rejected the argument raised by Pierce under this assignment of error. We have repeatedly held that R.C. Chapter 2950.01 et seq., even as amended by Senate Bill 5, does not violate either the Ohio or United States Constitutions as ex post facto or retroactive legislation, e.g., State v. Butler, supra; State v.Woodruff, Cuyahoga App. No. 85026, 2005-Ohio-4808; State v. Baron,156 Ohio App.3d 241, 246, 2004-Ohio-747; State v. Walker, Cuyahoga App. No. 86216, 2006-Ohio-108. We follow this precedent herein and overrule Pierce's second assignment of error.
 {¶ 28} Pierce's third assignment of error provides as follows:
 {¶ 29} "III. R.C. 2950.031 violates the Due Process Clauses of the United States and Ohio Constitution."
 {¶ 30} R.C. 2950.031 prohibits a person convicted of a sexually-oriented offense from establishing a residence or occupying a residential premises within *Page 13 
1,000 feet of any school premises. Pierce argues that the residency restrictions imposed by R.C. 2950.031, "both facially and as applied to him, violate the substantive component of the Due Process Clause of theFourteenth Amendment of the United States Constitution and of Section16, Article I of the Ohio Constitution, as well as the right to privacy guaranteed by Section I, Article I of the Ohio Constitution." More specifically, Pierce claims that the residency restrictions operate as a direct restraint on a person's liberty and a citizen's fundamental right to live where they wish as well as his or her right to privacy.
 {¶ 31} As an initial matter, Pierce failed to raise this argument in the trial court. In State v. Awan (1986), 22 Ohio St.3d 120, syllabus, the Ohio Supreme Court held as follows: "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." Nevertheless, it is recognized that the waiver doctrine is discretionary. In re M.D. (1988), 38 Ohio St.3d 149, 151. Further, "in the criminal context, Crim.R. 52(B) provides that `[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.'" Id.
 {¶ 32} In this case, we decline to exercise our discretion and find that Pierce has waived the issues raised under this assignment of error. Pierce has failed to show that he has suffered any actual deprivation of his property rights by operation *Page 14 
of R.C. 2950.031, as there was no evidence presented to show that he owns or resides in property within 1,000 feet of any school premises or that he has any present or imminent intention of moving to a residence within 1,000 feet of a school premises. Indeed, this court and others have previously found the doctrine of waiver to apply and declined to address similar challenges where there was a lack of evidence to establish the defendant was injured by the statutory provision.State v. Brown, Cuyahoga App. No. 86577, 2006-Ohio-4584; State v.Worst, Butler App. No. CA2004-10-270, 2005-Ohio-6550.
 {¶ 33} We also find that Pierce has failed to establish that he has standing to raise these challenges to R.C. 2950.031. "The constitutionality of a state statute may not be brought into question by one who is not within the class against whom the operation of the statute is alleged to have been unconstitutionally applied and who has not been injured by its alleged unconstitutional provision,'" State v.Brown, Cuyahoga App. No. 86577, 2006-Ohio-4584, quoting Palazzi v.Estate of Gardner (1987), 32 Ohio St.3d 169, syllabus. Likewise, it has been held that a defendant lacks standing to challenge the constitutionality of R.C. 2950.031 where the record fails to show whether the defendant has suffered an actual deprivation of his property rights by operation of R.C. 2950.031. Coston v. Petro (S.D. Ohio Nov. 7, 2005), 398 F.Supp.2d 878. Since Pierce failed to provide any evidence to demonstrate an injury in fact or an actual deprivation of his property rights, he lacks standing to raise this assignment of error. This conclusion is not altered by the fact *Page 15 
that Pierce purports to assert a facial challenge to the constitutionality of R.C. 2950.031. See Coston, 398 F.Supp.2d at 884.
 {¶ 34} Accordingly, Pierce's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, PRESIDING JUDGE
ANTHONY O. CALABRESE, JR., J., CONCURS; KENNETH A. ROCCO, J., DISSENTS (with separate opinion)
[1] This court has previously noted: "The utility of the Static-99 evaluation as a diagnostic tool for individual risk assessment is open to question. The evaluation merely performs an actuarial assessment of an offender's chances of reoffending. See State v. Colpetzer, Cuyahoga App. No. 79983, 2002-Ohio-967. While actuarial risk assessments are said to outperform clinical risk assessments, actuarial assessments do not, and cannot, purport to make a prediction of a particular offender's future conduct. In fact, the use of an actuarial assessment could arguably be at odds with Ohio's statutory scheme. R.C. 2950.01(E) and R.C. 2950.09(B) require a determination that the offender is likely to engage in the future in one or more sexually oriented offenses. This is an individualized determination for a particular offender. The Static-99 cannot purport to make an individualized assessment of future conduct any more than a life expectancy table can provide an accurate prediction of a particular individual's longevity." State v. Ellison, Cuyahoga App. No. 78256, 2002-Ohio-4024.