[Cite as *State v. Talani*, 2020-Ohio-3369.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 108788 |
| v. | : | |
| JEFFREY TALANI, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 18, 2020

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-88-225344-ZA and CR-94-313066-ZA

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel Van, Assistant Prosecuting Attorney, *for appellee.*

The Law Offices of Eric L. Foster, L.L.C., and Eric L. Foster, *for appellant.*

MARY J. BOYLE, P.J.:

{¶ 1} Defendant-appellant, Jeffrey Talani, appeals his classification as a sexual predator. He raises one assignment of error for our review:

The trial court erred in finding the state proved by clear and convincing evidence that Jeffrey Talani is a sexual predator under R.C. 2950.09.

**{¶ 2}** Finding no merit to his assignment of error, we affirm the trial court's judgment.

## I. Factual Background and Procedural History

**{¶ 3}** In 1988, in Cuyahoga C.P. No. CR-88-225344-ZA, Talani pleaded guilty to one count of sexual battery, with a specification that he caused physical harm to the victim, and three counts of gross sexual imposition. The trial court sentenced him to two-year prison terms for each count of gross sexual imposition, to be served consecutively to each other and concurrently to a prison term of four-to-ten years for sexual battery with the specification for causing physical harm to the victim.

**{¶ 4}** In 1995, in Cuyahoga C.P. No. CR-94-313066-ZA, a jury convicted Talani of one count of rape and one count of gross sexual imposition. The trial court sentenced him to life imprisonment for rape and a two-year prison term for gross sexual imposition, to run consecutively with the term of life imprisonment for rape. The trial court further ordered that Talani's sentence for CR-94-313066-ZA run consecutively to his sentence for CR-88-225344-ZA. This court affirmed his convictions. *State v. Talani*, 8th Dist. Cuyahoga No. 68750, 1996 Ohio App. LEXIS 60 (Jan. 11, 1996). In 1996, Talani petitioned to vacate or set aside his sentence, the trial court denied his motion, and this court affirmed. *State v. Talani*, 8th Dist. Cuyahoga No. 72031, 1997 Ohio App. LEXIS 5309 (Nov. 26, 1997).

**{¶ 5}** In a prior appeal, *State v. Talani*, 8th Dist. Cuyahoga No. 68750, 1996 Ohio App. LEXIS 60 (Jan. 11, 1996), we described the facts underlying Talani's convictions as follows:

> [D.T.], the victim [in CR-94-313066-ZA], testified that when she was nine years old Talani raped her. The victim stated that her brother passed away and the night before the funeral, February 18, 1983, she stayed over Talani's house at the request of her parents. The victim stated that she was asleep on the couch in the living room and Talani woke her up and told her to go to the basement with him. The victim testified that an adult movie was playing on the television in the basement. Talani ordered her to remove her clothes, made her touch his penis, and anally raped her.
>
> The victim testified that Talani, a city of Brooklyn Heights Police Officer, told her that if she ever told anyone about the incident he would kill her parents. The victim never reported the incident to anyone, not even to the police when she was questioned in 1987 about separate charges against Talani.
>
> [D.T.] stated that in 1994, she was treated for colitis and she informed her doctor that she had been anally raped years earlier. Her doctor sent her to see psychologist Martha Keyes to discuss the rape. In April 1994, the victim went to see Keyes and for the first time revealed the events that occurred on February 18, 1983.
>
> [L.T.], the victim's mother testified that after February 13, 1983 her daughter was withdrawn and quiet. In days that followed, the victim blurted out that it was all [L.T.]'s fault. [L.T.] did not understand what her daughter meant.
>
> [A.A.], another sexual abuse victim of Talani, testified that Talani had sexually abused her in 1987. [A.A.] stated that while Talani was the chief of police he forced her to rub his penis to ejaculation, anally and digitally penetrated her. Talani was convicted of sexually abusing [A.A.] [in CR-88-225344-ZA] and was serving his sentence during the trial now on appeal.

*Id.* at 1-3.

{¶ 6} In 2018, the Ohio Department of Rehabilitation and Correction notified the trial court and Talani that Talani required a sexual predator classification hearing pursuant to Megan's Law since he was convicted before 1997 and is still serving his prison sentence. The court psychiatric clinic evaluated 65-year-old Talani and completed a sexual offender evaluation report dated January 28, 2019.

{¶ 7} According to the evaluation report, Talani was police chief in Brooklyn Heights in 1980 until he was charged with sexual offenses in 1987, and he was on the Cuyahoga Heights School Board from 1984 to 1988. The report states that in 1987, Talani was charged with sexual abuse of two girls, ages four and eight, and in 1994, he was charged with sexually assaulting a nine-year-old girl in 1983. Talani told the evaluator "that he did not commit any sexual assaults against these females." According to the report, the Parole Board has denied his requests for parole "several times" because Talani has continued to deny that he committed any sexual offenses.

{¶ 8} The evaluation report states that the "Comprehensive Sex Offender Program was recommended," but Talani did not complete it because he denied "sexually abusing anyone." The evaluator asked Talani what he learned from the sexual offender programming that he did complete, and Talani replied, "I learned that I ain't no pervert—that I don't have no sexual deviance."

{¶ 9} The evaluation report explains that in 2012, Talani was sanctioned for having a relationship with a female prison guard. Talani told the evaluator that he

"became attracted to" the guard and that they "had feelings for each other" but that their relationship was "never sexual."

{¶ 10} The evaluation report summarizes Talani's results on the Static-99R actuarial instrument designed to estimate the likelihood of sexual-offense recidivism. Talani's Static-99R score was negative two, which indicates that he has a "very low" risk of recidivism. The evaluation report also explains that based on the Abel Assessment for Sexual Interest, Talani has a sexual interest in adolescent and adult females. Based on the objective measure of the Abel Assessment, Talani "has a significant sexual interest in adolescent (14-to-17-year-old) and adult females." The report further noted that "it is 'normal' for adult test subjects to have a sexual interest in adolescents."

{¶ 11} On March 20, 2019, the trial court held a hearing to determine whether Talani should be classified as a sexual predator under Am. Sub. H.B. No. 180 ("Megan's Law"). The state entered as exhibits the sexual offender evaluation report; the indictment, plea, and sentence for CR-88-225344-ZA; the indictment, verdict, and sentence for CR-94-313066-ZA; the indictment, plea, and sentence for a nonsexual, assault offense that Talani committed in 1988; a blank Static-99R scoring sheet; and the Static-99R coding rule book.

{¶ 12} On March 21, 2019, the trial court found that the state had shown by clear and convincing evidence that Talani should be classified as a sexual predator considering the statutory factors, his age, his prior history and convictions for sexual offenses, the victims' ages, number of victims, failure to complete sex offender

programming while in prison, and a pattern of abuse and threats of cruelty. The trial court then advised Talani on his registration requirements. Under Megan's Law, a sexual-predator classification is the most severe designation, requiring Talani to register every 90 days for the rest of his life. Former R.C. 2950.06(B)(1) and 2950.07(B)(1).

{¶ 13} It is from this judgment that Talani now appeals.

## II. Law and Analysis

{¶ 14} In his sole assignment of error, Talani argues that the trial court erred in classifying him as a sexual predator. He contends that the evidence does not support the trial court's finding that he is "likely to engage in the future in one or more sexually oriented offenses." He maintains his innocence and argues that his completion of only mandatory sex offender programming should not count against him. He further contends that the Static-99R Assessment suggests that he is unlikely to reoffend.

{¶ 15} Neither party disputes that because Talani committed his crimes before Megan's Law was enacted in 1997 and was still serving his sentence, he was subject to the sexual offender classification system under Megan's Law. *See State v. Kahn*, 8th Dist. Cuyahoga No. 104360, 2017-Ohio-4067, ¶ 25 (offenders who committed their offenses prior to January 1, 2008 are subject to the sexual-offender classification system and hearing requirements under Megan's Law).

{¶ 16} Under Megan's Law, there were three classifications for sexual offenders: sexually oriented offender, habitual sex offender, and sexual predator.

The main distinctions in the classifications were the reporting requirements: a sexual predator had to register his or her address every 90 days for life; a habitual sex offender had to register his or her address annually for 20 years; and a sexually oriented offender had to register his or her address annually for 10 years. *See* former R.C. 2950.04(C)(2); former 2950.06(B)(1) and (2); and former 2950.07(B)(1) and (2).

{¶ 17} The "sexually oriented offender" classification is the least restrictive classification. *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502, ¶ 9. While it was not defined by R.C. Chapter 2950, the Ohio Supreme Court explained that "a 'sexually oriented offender' is a person 'who has committed a "sexually oriented offense" as that term is defined in R.C. 2950.01(D) but who does not fit the description of either habitual sex offender or sexual predator.'" *Id.*, quoting *State v. Cook*, 83 Ohio St.3d 404, 700 N.E.2d 570 (1998), and *State v. Williams*, 88 Ohio St.3d 513, 728 N.E.2d 342 (2000). The next classification is "habitual sex offender," which is defined as a person who "is convicted of or pleads guilty to a sexually oriented offense and who previously has been convicted of or pleaded guilty to one or more sexually oriented offenses." Former R.C. 2950.01(B). Finally, the most restrictive classification is "sexual predator," which is defined as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." Former R.C. 2950.01(E).

{¶ 18} Sexual predator classifications under Megan's Law are considered civil in nature. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, syllabus. As a result, the civil manifest-weight-of-the-evidence standard of review applies on appeal. *State v. Nelson*, 8th Dist. Cuyahoga No. 101228, 2014-Ohio-5285, ¶ 8. That standard gives "great deference" to findings of fact, so judgments supported by competent, credible evidence must be affirmed. *Wilson* at ¶ 26. Moreover, the state had the burden of proving by clear and convincing evidence that Talani was a sexual predator. *State v. Hendricks*, 8th Dist. Cuyahoga No. 102365, 2015-Ohio-3035, ¶ 13. "Clear and convincing evidence" is "that measure or degree of proof" that "produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Lansdowne v. Beacon Journal Publishing Co.*, 32 Ohio St.3d 176, 180-181, 512 N.E.2d 979 (1987), citing *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954).

{¶ 19} Former R.C. 2950.09(B)(3) set forth factors for a trial court to consider when determining whether an offender should be classified as a sexual predator. Those factors included the offender's age and criminal record; the victim's age; whether the offense involved multiple victims; whether the offender used drugs or alcohol to impair the victim; whether the offender has previously been convicted of any criminal offense; whether the offender participated in any available program for sex offenders; whether the offender demonstrated a pattern of abuse or displayed cruelty toward the victim; any mental illness or disability of the offender; and any other behavioral characteristics that contribute to the sex offender's conduct. *See*

former R.C. 2950.09(B)(3)(a)-(j).  Although the court must consider the factors set forth in former R.C. 2950.09(B), it is not required to make an individual assessment of those factors, nor is one factor or any combination of factors dispositive.  *Kahn*, 8th Dist. Cuyahoga No. 104360, 2017-Ohio-4067, at ¶ 28, citing *State v. Caraballo*, 8th Dist. Cuyahoga No. 89757, 2008-Ohio-2046.

{¶ 20} Talani's overarching argument is that he is innocent of the crimes for which he was convicted.  During the sexual predator classification hearing and in his appellate brief, Talani asserts his innocence for the crimes of which the jury convicted him in CR-94-313066-ZA.  In the sexual offender evaluation report, he claims that he is innocent for all offenses, including the offenses of which he plead guilty in CR-88-225344-ZA.  This court has already affirmed Talani's convictions in CR-94-313066-ZA, and his convictions are not before us on appeal.  *Talani*, 8th Dist. Cuyahoga No. 68750, 1996 Ohio App. LEXIS 60.

{¶ 21} Talani argues that the trial court erroneously determined that R.C. 2950.09(B)(3)(f) requires him to participate in every available sex offender program.  He maintains that he chose not to participate in the recommended, but non-mandatory, programming because he did not sexually abuse anyone, and he should not be punished for disagreeing with the jury that convicted him.  Former R.C. 2950.09(B)(3)(f) includes as a factor "whether the offender participated in available programs for sexual offenders."  The trial court heard evidence that Talani completed all mandatory sex offender programs but did not participate in any additional, recommended programs.  The trial court found that Talani completed no

programming in prison "other than mandatory sex offender programming." The trial court did not determine that Talani was required to participate in every available program, and the trial court's consideration of whether Talani "participated in available program for sexual offenders" was consistent with R.C. 2950.09(B)(3)(f).

{¶ 22} Talani further argues that his Static-99R score of negative two shows that he is unlikely to reoffend. Factors considered on the Static-99R include prior sexual offenses, victim characteristics, and the perpetrator's age. The sexual offender evaluation report explains that Talani's 1988 and 1994 charges for sexual offenses were an "index cluster" and were "brought forward" to the 1994 conviction. The Static-99R Coding Rules, which the state entered into evidence at the sexual classification hearing, describes index clusters as follows:

> An offender may commit a number of sex offences in different jurisdictions, over a protracted period, in a spree of offending prior to being detected or arrested. Even though the offender may have a number of sentencing dates in different jurisdictions, the subsequent charges and convictions would constitute an index cluster. These "spree" offences would group together – the early ones would not be considered "priors" and the last, the "index" - they all become the index cluster. This is because the offender has not been "caught" for the earlier offences [sic] and then "chosen" to reoffend in spite of the detection. Furthermore, historical offences that are detected after the offender is convicted of a more recent sex offence would be considered part of the index offence (pseudo-recidivism) and become part of the index cluster[.]
>
> * * *
>
> For two offences to be considered separate offences, the second offence must have been committed after the offender was detected (i.e., arrested or charged) and/or sanctioned for the previous offence. For

example, a sex offence committed while an offender was released on bail for a previous sex offence would supersede the previous charge and become the index offence. This is because the offender knew he had been detected for his previous crimes but chose to reoffend anyway.

{¶ 23} Here, Talani committed sexual offenses in 1983 and 1988. Only after he was charged and sentenced for the 1988 offenses was he charged and convicted of the 1983 offenses. Therefore, the offenses from 1983 and 1988 together constituted the index cluster, and Talani received no points for prior sex offenses. Talani scored one point for "unrelated victims" and negative three points for being over age 60. Talani's Static-99R score was therefore negative two, and his risk of recidivism "very low." The sexual offender evaluation report notes that the Static-99R "does not measure all relevant risk factors[,] and Mr. Talani's recidivism risk may be higher or lower than that indicated by Static-99R based on factors not included in this risk tool."

{¶ 24} Talani contends that the Static-99R is a valuable tool that should be considered as evidence that he should not be designated a sexual predator. Talani points to *State v. Eppinger*, 91 Ohio St.3d 158, 163, 743 N.E.2d 881, 2001-Ohio-247, in which the Ohio Supreme Court stated that "the evidence presented by a psychologist, psychiatrist, or other expert in the field of predicting future behavior may be the best tool available to the court to assist it in making these determinations." He also relies on *State v. Pierce*, 8th Dist. Cuyahoga No. 88470, 2007-Ohio-3665, ¶ 20, in which this court acknowledged the "inconsistent application of the predator label." Talani further identifies cases in which this court

has accepted the Static-99R to support a finding under R.C. 2950.09: *State v. Durant*, 2017-Ohio-8482, 99 N.E.3d 1217 (8th Dist.); *State v. Dooley*, 8th Dist. Cuyahoga No. 84206, 2005-Ohio-628; *State v. Ford*, 8th Dist. Cuyahoga No. 83683, 2004-Ohio-3293; *State v. Hardges*, 8th Dist. Cuyahoga No. 88126, 2007-Ohio-1158; *Pierce*, 8th Dist. Cuyahoga No. 88470, 2007-Ohio-3665.

{¶ 25} The state argues that this court has questioned the utility of the Static-99 assessment, citing to *State v. Ellison,* 8th Dist. Cuyahoga No. 78256, 2002-Ohio-4024 and *State v. Gray*, 8th Dist. Cuyahoga No. 100492, 2014-Ohio-3139. In *Ellison*, this court held that "[t]he STATIC-99 cannot purport to make an individualized assessment of future conduct any more than a life expectancy table can provide a[n] accurate prediction of a particular individual's longevity." *Ellison* at ¶ 9. In *Ellison*, this court affirmed the trial court's sexual-predator classification and stated that the trial court "was not obligated to give the psychological report any great weight." *Id.* In *Gray*, we stated that "while the trial court could consider the Static-99 results, it was not required to defer to those results when weighing the statutory factors." *Gray* at ¶ 19; *see also State v. Purser*, 153 Ohio App.3d 144, 2003-Ohio-3523, 791 N.E.2d 1053, ¶ 42 (8th Dist.) ("psychological tests designed to indicate a sexual offender's propensity to reoffend, and the resulting risk level, must * * * not be blindly relied upon.").

{¶ 26} Although the Static-99R favors Talani in this case, we nonetheless cannot ignore the other factors that are present and upon which the trial court relied in reaching its determination. "The trial court may place as much or as little weight

on any of the factors as it chooses; the test is not a balancing one. Nor does the trial court have to find the majority of the factors to be applicable to the defendant in order to conclude the defendant is a sexual predator." *State v. Butler*, 8th Dist. Cuyahoga No. 86554, 2006-Ohio-4492. Like any other factor, the weight a court gives to a Static-99 assessment is within the court's discretion. We cannot substitute our judgment for that of the trial judge. *State v. Blake-Taylor*, 8th Dist. Cuyahoga No. 100419, 2014-Ohio-3495, ¶ 12.

{¶ 27} In reviewing the record here, the trial court adhered to the statutory requirements and considered the relevant factors enumerated in R.C. 2950.09(B)(3). The court considered the evidence and testimony presented as well as the arguments of counsel. The trial court found relevant to its determination the number and ages of Talani's victims (three victims, ages 4, 8, and 9 years old); his criminal history and multiple convictions for sexual offenses; his refusal to complete recommended sex offender training; and his pattern of abuse and threats of cruelty. Despite Talani's age and Static-99R score, the record demonstrates that the trial court was presented with competent, credible evidence to support its ultimate determination that Talani is a sexual predator as contemplated by R.C. 2950.01(E). Our review reflects that the trial court's decision was supported by the manifest weight of the evidence.

{¶ 28} Accordingly, we overrule Talani's assignment of error.

{¶ 29} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
RAYMOND C. HEADEN, J., CONCUR